## SIZER & COMPANY *v.* MELTON & SONS.

1. Since the passage of the act of 1894 (Civil Code, § 4589), requiring exceptions to an auditor's report to be filed within twenty days, if an amendment can be allowed at all after the expiration of that time so as to add a new and distinct exception to those already made, it would at least be necessary to show some good and sufficient reason why the exception was not filed with the others in due time.

2. No such reason appears in the present case.

3. A party's answers to interrogatories are evidence against him as admissions, though the interrogatories may belong to a different case.

4. The mere fact that a corporation sued out interrogatories for its "vice-president and Southern manager," in one case, would not of itself render his answers admissible in another case as admissions of the company; and this is specially true where it did not appear that they were introduced in evidence by the principal.

5. A witness may refresh and assist his memory by the use of a written instrument or memorandum, provided he finally speaks from his recollection thus refreshed, or is willing to swear positively from the paper. In order to swear positively from the paper, it is essential that the witness should at some time have had personal knowledge of the correctness of the memorandum. .

6. If a subpœna duces tecum was served in a case pending before an auditor, and the papers called for were produced and used in evidence, the sufficiency of the subpœna to require the production and the ruling of the auditor on that subject become immaterial questions.

7. The general rule is that the measure of damages recoverable of a seller for failure to deliver goods sold is the difference between the contract price and the market value at the time and place for delivery; and it is incumbent on one who seeks to recover such damages to submit evidence as to the market price at the time and place for delivery, in order to recover compensatory damages.

8. To this general rule as to the measure of damages there are some exceptions, as, for instance, those growing out of contracts in relation to the sale or furnishing of things which are not dealt with in the market, and have no market price in the ordinary sense of that term, or contracts in regard to the manufacture of certain articles.

9. It can not be held as matter of law that the lumber, the sale of which is involved in the present case had no market value, and that the auditor erred in referring to the market value in considering the measure of damages.

10. Where it was found in an auditor's report that a seller was not liable at all for alleged breaches of contracts to deliver lumber, if this finding should be affirmed, inaccuracies in his report, in discussing what would have been the measure of damages if the liability had existed, would be immaterial.

11. Where in a civil case, after the judge had concluded his charge to the jury, by agreement of counsel he instructed the sheriff that if the jury found a verdict by a certain hour the judge and counsel should be notified, and that the court would reconvene to receive the verdict, but if it should be found after that hour they should prepare a sealed verdict and disperse for the night, and the verdict should be returned into court on the following day; and where the jury found a verdict before the hour designated in the judge's instructions, but, without communicating with the court or counsel, sealed it up, delivered it to the clerk, and dispersed, and the verdict was returned into court on the following morning, the jury were called into the box, and in their presence and that of the court and counsel the verdict was published by the clerk, if counsel knew the facts, ·it was incumbent on them to

object to the reception and publication of the verdict before it was done. If they failed to do so, it was a waiver of the irregularity.

12. None of the other rulings complained of require a reversal.

Argued February 19,—Decided October 5, 1907.

Exceptions to auditor's report. Before Judge Parker. Appling superior court. December 30, 1905.

G. T. Melton & Sons sued out an attachment against Robert R. Sizer & Company, a corporation of the State of New York. The declaration in attachment alleged, in brief, as follows: During the year 1901, Robert R. Sizer, doing business under the name and style of Robert R. Sizer & Company, was engaged in buying and selling lumber and shipping it from the port of Brunswick, Georgia, and had an office in that city. While so engaged, the plaintiffs entered into certain contracts with the defendant for the manufacture, sale, and delivery of certain lumber. The agreements were originally entered into verbally with Sizer, doing business under the name of Robert R. Sizer & Company, during the latter part of the year 1901. On or about January 1, 1902, Robert R. Sizer, without the knowledge of or notice to the plaintiffs, surreptitiously, clandestinely, and with intent to cheat and defraud the plaintiffs, incorporated the business under the laws of New York under the same name and style as that which he had been using previously. No change in letter-heads or stationery was made, so as to put the public on notice of any incorporation. Plaintiffs did not know of the fact of the incorporation. The company gave written orders for the lumber under the same name and style, and the plaintiffs furnished it. The corporation, having thus ordered the lumber, received, used, and converted it. Defendant only paid for a part of the lumber so furnished, leaving a balance due of $1,665.45. Subsequently to the delivery of the lumber the plaintiffs learned that Sizer had transferred his business to Robert R. Sizer & Co. as a corporation, including all existing contracts and liabilities connected with the business, which were assumed and accepted by the company. After January 1, 1902, the corporation was the only person engaged in the lumber business in Brunswick under the name and style stated. It was alleged in a second count that the plaintiffs sold and delivered to the defendant the lumber, and that the defendant accepted it at the prices stated. In a third count it was alleged, that the plaintiffs deliv-

10

cred the lumber to the corporation and the latter received it; that it was of the fair market value of the prices charged, as set out in an exhibit; and that the defendant made certain payments, but refused to pay the balance. Defendant demurred to the declaration, and objected to the amendments adding counts. The case was referred to an auditor. He found in favor of the plaintiffs $1,664.93 principal. A motion was made to re-refer the case for fuller report, which was overruled. Exceptions of law and fact were filed by the defendant. It was allowed to amend by adding an exception of law which complained of the overruling of the demurrer. To this the plaintiffs excepted pendente lite. The exceptions of law were overruled. The exceptions of fact were submitted to a jury, who found against them. Defendant moved for a new trial, which was refused, and it excepted.

*Kay, Bennet & Conyers,* for plaintiff in error.

*Harry F. Dunwody,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

In musical parlance, this case may be said to comprehend a theme and variations. The theme is the question of the liability of a corporation, which obtained a charter in the same name as that in which an individual (previously conducting the business) had agreed to buy lumber, gave orders for the lumber in that name, without any notice of change to the vendors, received and used it, recognizing the prices charged as proper, partly paid for what it received, and then declined to pay the balance due. The principal variation arises from a claim of recoupment set up by the defendant on account of an alleged non-compliance by the plaintiffs with their contracts as to the furnishing of the lumber. Minor variations include a motion to recommit the case to the auditor, objections to amendments, exceptions to the report, a motion for a new trial after verdict of the jury on the exceptions of fact, and a bill of exceptions and a cross-bill (all forming a sort of double chromatic scale, extending up and down, with the addition of a few extra notes beyond the twenty-six which would suffice to constitute a complete double scale).

1, 2. The auditor, to whom the case was referred, found in favor of the plaintiffs. The defendant filed exceptions to his report. After the lapse of twenty days an amendment was tendered, making an additional exception. This amendment was allowed

over objection, and this ruling has been brought here by a cross-bill of exceptions filed by the defendant in error. The ground of the exception was as follows: The auditor's report stated that, "At the time appointed to take testimony, and before hearing the same, I heard argument upon the demurrers filed by the defendant, and I overruled the demurrers on all the grounds therein; all of which is a matter of record in said cause." The errors assigned were: (a) that this was contrary to law; (b) because there is no record or entry made by the auditor overruling said demurrers; (c) because there could be no overruling of the demurrers, except by a formal order signed by the auditor for that purpose; (d) because the auditor should have found in favor of the demurrers, and should have passed and signed an order sustaining each and all of the grounds thereof. If the auditor failed to pass on some necessary question, the proper remedy was by a motion for a re-reference, rather than by exception to the report. *Fricker* v. *Americus Improvement Co.*, 124 *Ga.* 165. The auditor stated in his report that he had overruled the demurrers; and we incline to think that this amounted to a ruling on that subject. But whether it did or not, what the auditor did was just as clear and complete when he filed his report and gave notice of it as it was at any time thereafter. It is very doubtful whether, after the expiration of the twenty days allowed by law for filing exceptions, a new and distinct exception can be added to those already filed, by way of amendment. If it can be done at all, such an amendment is not a matter of course, but some good and sufficient reason must be shown for its allowance. To permit a party to file a mere formal exception to an auditor's report within twenty days, and then add new grounds of exception at any time thereafter when he may so desire, as matter of right, would practically destroy the purpose of the statute. Civil Code, §4589; *Moss* v. *Chappell*, 126 *Ga.* 196, 199, and citations. Here no sufficient reason was shown why this exception should not have been filed in due time. If what the auditor did was erroneous and furnished ground for exception, it was just as erroneous when he did it as it ever became. The presiding judge erred in allowing the amendment, but he corrected the error, as far as he could, by overruling the exception and adding to his order a statement that the demurrers themselves were overruled.

3, 4. In another case than that on trial, the evidence of the vice-president and Southern manager of the defendant had been taken by interrogatories. In the present case these interrogatories and answers were offered by the plaintiffs to show admissions of material facts. Objection was made to this evidence, but it was overruled, and this furnished a ground of exception to the auditor's report. "A party's answers to interrogatories are evidence against him as admissions, though the interrogatories may belong to a different case." *Whitlock* v. *Crew,* 28 *Ga.* 289 (3) ; *Maxwell* v. *Harrison,* 8 *Ga.* 61 (5). The interrogatories and answers offered in this case were not those of a party, but of an officer and agent of a corporation, taken in another case. For them to be admissible against the principal, it must be on one of two theories: either because the agent had authority to make the admissions for his principal, or else because his testimony was taken and so dealt with by the corporation as to become a quasi admission by it.

Testifying as a witness in a lawsuit is no part of the res gestæ of the transaction involved in the litigation, and, as a general rule, the declarations of an agent, to affect his principal, must be a part of the res gestæ. *Savannah, Florida & Western Ry. Co.* v. *Flannagan,* 82 *Ga.* 580 (5), 587-588. The title of vice-president does not in itself imply authority to make admissions for a corporation. The title of Southern manager may imply authority to manage business in the South. But testifying as a witness is not such a normal part of the lumber business as that testimony given by him as a witness is impliedly an admission of the lumber company. The decision in *Krogg* v. *Atlanta & West Point Railroad,* 77 *Ga.* 202, probably went as far as any case in this State on the admissions of an agent. It has been since criticised, explained, and differentiated. *Carroll* v. *East Tenn. Ry. Co.,* 82 *Ga.* 452, 476; *Electric Ry. Co.* v. *Carson,* 98 *Ga.* 652; *Chattanooga R. Co.* v. *Liddell,* 85 *Ga.* 492. In the *Krogg* case the statement of the general manager was said to have been made while acting in the line of his duty. And so likewise of the president in *Imboden* v. *Etowah Mining Co.,* 70 *Ga.* 86 (12c). In *Dobbins* v. *Pyrolusite Manganese Co.,* 75 *Ga.* 450, the admission of the president was apparently made in connection with the business of the company.

On the other theory, the matter might be disposed of by saying that it was stated in the record that the interrogatories were sued

out in another case, but it was·not shown that they· were introduced in evidence by the corporation; and the mere suing out by a party of the interrogatories or taking the depositions of a witness does not render them admissible against him as an implied admission in a subsequent litigation. Hovey *v.* Hovey, 9 Mass. 216; Hallet *v.* O'Brien, 1 Ala. 585, 589. But had it appeared that they were introduced on the former trial, would this alone have made them admissible? We think not. If a party makes an express admission, or if he expressly states that a certain piece of evidence given by another is correct, it may be introduced against him.· The ground on which the admissibility of implied admissions rests is this: If the conduct of a party is such as to amount to or imply an admission, this may be shown; thus, if one conceals evidence, or seeks to bribe a witness, or remains silent when he should deny a statement, or the like. And so, in a lawsuit, if one knowingly offers a particular statement for a specific purpose, he may impliedly make it his own admission. But a litigant does not by implication approve and adopt as his own all statements in depositions, testimonies, and affidavits offered in his behalf, so that afterwards they may be used against. him as admissions. Such a rule would breed great confusion and tend to hamper rather than aid the free investigation of questions involved in litigation. A party may often prove some facts by one witness and others by another. The two may not coincide in some respects. Has he admitted both ways? He may not impeach his own witness, unless entrapped by him, but may show that the facts are different from the statement of the witness. Civil Code, ·§5290; *Moultrie Repair Co.* v. *Hill,* 120 *Ga.* 730 (3).

In Richards *v.* Morgan, 4 Best & Smith, 641, 660, et seq. (10 Jur. N. S. 559, 564), is an able and elaborate discussion of the subject by Cockburn, C. J. He declared that merely calling a witness does not render all he ˙says admissible against the party calling him; and, after reviewing previous cases, said: "It would be in the highest degree unreasonable to suffer the ˙party using the evidence to be affected by that portion which he may have repudiated or disregarded, on the ground that the statements of the witness must be taken to be his. Bearing in mind that the true ground on which such evidence is admissible is, that a party seeking to establish a fact by evidence in a court of justice must be

taken to assert the fact he so seeks to prove, it seems to me to follow, on the one hand, that oral evidence, so far as it shall appear to have been used to establish a specific fact, will be evidence against the party using it, as an assertion of that fact; and on the other, that written evidence will be admissible against the party using it in a subsequent proceeding with a different party, not for the purpose of proving all the statements it may contain, but only so far as it shall appear to have been used to establish a given fact or facts. It is not because a witness may have been called, or a deposition may have been used, that all the statements made are to be considered as having been adopted by the party using the evidence. In order to render this species of evidence admissible as the assertion of a particular fact by the party using it, it must appear, either from the evidence itself, or from extrinsic circumstances, that it was used for the purpose of proving such fact." Crompton, J., concurred in the judgment. Blackburn, J., dissented. A simple illustration may make the position clearer: On a trial, suppose a question involved is whether the defendant was at the city of A on a given date. He introduces a witness for the purpose of showing that he was not at A, but at the town of B. This amounts to an implied assertion that he was at B, and not at A. Subsequently in another litigation he claims not to have been at B, but at A. It may be shown that in the former case he introduced the evidence of the witness to prove his absence from A, and his presence at B. The basis for admitting such evidence at all is, that, under the circumstances, there was an implied assertion of a fact. And a party does not broadly assert by implication everything said by a witness whom he puts on the stand or examines by interrogatories. The distinction at one time sought to be made between the two modes has been repudiated.

These interrogatories and answers were not offered for the purpose of impeachment, or to show notice of any fact, but as containing admissions. Under what has been said above, as the case now appears in the record, the admission of this evidence was erroneous. See on the general subject 2 Wigmore, Ev. §1075, and notes; Evans *v.* Methyr etc. Council (1899), 1 Ch. 241, 250, 251; Begeard *v.* Consolidated Traction Co., 64 N. J. L. 316; Wilkins *v.* Stidger, 22 Cal. 231; Martin *v.* Roat, 17 Mass. 227.

5. A witness may refresh and assist his memory by the use of any written instrument or memorandum, provided he finally speaks from his recollection thus refreshed, or is willing to swear positively from the paper." Civil Code, §5284. In order to swear positively from the paper, it is essential that the witness should at some time have had personal knowledge of the correctness of the memorandum. *Lenney* v. *Finley*, 118 *Ga.* 427, 430; *Hematite Mining Co.* v. *East Tenn., Va. & Ga. Ry. Co.*, 92 *Ga.* 268. The evidence made out such a case as authorized the witness to swear from the memoranda. Where a lumber raft was made up at one point on a river and floated down to another and delivered, it was relevant, on the question of what lumber was delivered, to show what lumber went into the raft at the starting point.

6. Exception was taken to an order of the auditor requiring certain papers to be produced under a subpœna duces tecum. But the papers were in fact produced and put in evidence; and the sufficiency of the subpœna, and the ruling of the auditor as to it, became immaterial questions. *Starr* v. *Mayer*, 60 *Ga.* 546 (3).

7-10. The general rule is that the measure of damages recoverable of the seller for failure to deliver goods sold is the difference between the contract price and the market value at the time and place for delivery. Where the vendee seeks to recover damages for a failure to deliver such goods, under the general rule it is incumbent on him to submit evidence as to the market price at the time and place for delivery, in order to recover actual damages. *Bloom* v. *Americus Grocery Co.*, 116 *Ga.* 784. Where the delivery is to be made in instalments, the measure of damages is the sum of the differences between the contract price and the market price at the several times for delivery. 24 Am. & Eng. Enc. Law, 1152 (c) and note 1. To this general rule there are some exceptions. Thus the thing contracted for may be such as can not be bought in the market, or of a kind as to which there are no dealings, so as to fix a market price. The property may be of a character which has to be specially made for the particular purpose for which it is ordered,—as a machine or a part of a machine needed to meet a special purpose or requirement, and which is not of such a character as is kept for sale on the market or as has a market value or price in the usual sense of that term. In such cases the general rule can not be applied, but the "damages re-

coverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach, and such as the parties contemplated, when the contract was made, as the probable result of its breach." Civil Code, § 3799. Any necessary expense which one of two contracting parties incurs in complying with the contract may be recovered as damages. Civil Code, § 3806. As to the measure of damages, where the contract contemplates the manufacture of certain articles, and is not an ordinary contract of bargain and sale, see George Delker Co. *v.* Hess Spring & Axle Co., 138 Fed. 647; Roehm *v.* Horst, 178 U. S. 1. In Den Bleyker *v.* Gaston, 97 Mich. 354, 56 N. W. 763, it was held that lumber of a particular grade, cut into strips for a special purpose, and as to which there was no market price, did not fall within the general rule. We need not discuss the subject of damages in mutual contemplation of the parties.

We can not say, as matter of law, that the lumber ordered in this case did not have a market price. In *Southwestern R. Co.* v. *Rowan,* 43 *Ga.* 411, there was evidence of a difference in market price. In discussing the subject McCay, J., said: "The case of the *Southwestern Railroad Company* v. *Bryan,* 41 *Georgia,* 71, was a case of cross-ties, an article the market value of which it is almost impossible to fix, since there is, ordinarily, but one purchaser in a community. The case of stringers stands on a different footing. Sawed lumber has a distinct market value in almost every community." In *Fontaine* v. *Baxley,* 90 *Ga.* 416, 426, the subject under discussion was whether there was mutuality, so as to make certain contracts binding. In dealing with this question Bleckley, C. J., remarked that "It must be remembered, in behalf of both these contracting parties, that cross-ties are not a commodity of general commerce; that they are neither to be procured at all times in the market by one wishing to buy them, nor to be disposed of readily and quickly by one wishing to sell them. On the contrary, demand must prearrange for supply, and supply before becoming abundant must prearrange for demand." The question of the measure of damages was not there directly under consideration.

Whether lumber of the character involved in the present case was a commodity having a market value, and to which the general rule could be applied, seems rather to be a matter of fact than

one of law. There may be clear cases where the courts can take judicial cognizance that a thing has or has not a market, and a market value; but there are also cases where this information must be derived from the facts. The courts will need no proof that corn, flour, hay, and other things of like character are commonly dealt with on the market, and have a market value. There are other things which at first may not be kept on the market, but with an increased dealing in them may come to be marketable things, with a market price. Some of the auditor's discussion in regard to the measure of damages was not strictly accurate. But he only made a report on the measure of damages in case his finding in regard to the right to recover damages should be reversed. On that subject he said: "I do not find, therefore, that any of the contracts were broken by the plaintiffs, and do not therefore reduce plaintiff's recovery any amount for damages."

11. The court finished charging the jury just at the hour for adjournment in the afternoon. By agreement of counsel, the court instructed the sheriff to take the jury out, and, if they found a verdict by nine or ten o'clock at night, to communicate with the judge and counsel, and the court would reconvene to receive the verdict; that if the verdict was not found until after that time, then the jury might disperse, after preparing a sealed verdict to be returned into court the following day. The jury found a verdict before seven o'clock in the evening, and, without communicating with the court or counsel, sealed it up, delivered it to the clerk, and dispersed. The sealed verdict was returned into court the following morning, the jury were called into the box, and the clerk opened and read the verdict in the presence of the jury, the court, and counsel. It does not appear that counsel were not aware of all the facts, or that they made any objection to the publication and recording of the sealed verdict. If they knew the facts, and sat quietly by and permitted the verdict to be received and published without objection, this operated as a waiver of the defect. A party can not wait to see which way the jury finds, and then, if the verdict is adverse to him, object to some mere irregularity in the mode of receiving or publishing it, of which he had knowledge in advance. *Adkins* v. *Williams*, 23 *Ga* 222; *Stix* v. *Pump*, 37 *Ga.* 332 (3); *Barfield* v. *Mullino*, 107 *Ga.* 730; *Bowdoin* v. *State*, 113 *Ga.* 1150.

12. The various other objections, exceptions, and grounds of the motion for a new trial do not require a discussion in detail. Suffice it to say that none of them necessitate a reversal.

*Judgment reversed on both bills of exceptions.  All the Justices concur, except Atkinson, J., disqualified.*