CHANCE, administrator, *v.* CHANCE *et al.*

1. The evidence set out in the first division of the opinion does not come within the inhibition of the Civil Code (1910), § 5858, par. 4. The witness was not a party to the suit, and was not testifying in his own interest, but was testifying against his interest.
2. The general rule is that subscribing witnesses must be produced. But there are exceptions to the rule. One is, if the paper is only incidentally or collaterally material to the case. The bond for title admitted over objection was only collaterally material to the present case.
3. The evidence authorized the verdict, and the judge did not err in overruling the motion for new trial.

<div align="center">No. 5318. November 23, 1926.</div>

---

Evidence, 22 C. J. p. 936, n. 60; p. 938, n. 89.
Witnesses, 40 Cyc. p. 2334, n. 86, 87.

Equitable petition. Before Judge Roop. Carroll superior court. January 18, 1926.

*Boykin & Boykin,* for plaintiff in error.

*Smith & Taylor* and *Smith & Millican,* contra.

HILL, J. C. C. Chance and W. F. Chance brought an equitable petition against J. W. Chance Jr., as administrator of the estate of J. W. Chance Sr., and prayed for an accounting, and that they have judgment for their distributive shares in the estate upon such accounting. The defendant filed a plea averring that both of the plaintiffs were indebted to the estate of J. W. Chance Sr. in certain amounts upon promissory notes which he held as administrator, and which were given to J. W. Chance Sr., in his lifetime. Both of the plaintiffs insisted, on the trial of the case, that the notes referred to in the defendant's answer had been settled in full with their father prior to his death. After evidence was introduced by both sides the jury returned a special verdict in answer to certain questions propounded by the court, to the effect that both of the notes had been paid in full to J. W. Chance Sr., prior to his death. In accordance with the verdict the court decreed that the plaintiffs have and recover of the defendant their distributive shares of the estate. The defendant made a motion for new trial upon the general grounds and two special grounds, which was overruled, and the defendant excepted. On the argument here it is not insisted by plaintiff in error that the verdict is not supported by the evidence. On the contrary it is stated in his brief that the verdict is supported by evidence, and from an examination of the evidence we find this to be true.

1. But it is insisted that the court erred in admitting the following evidence of Noel Chance, he being interested in the estate of the deceased: "I am a son of J. W. Chance Sr., and a brother of the plaintiffs here, and of the defendant. I was present at the time a contract was made between my father and W. F. Chance. That was in Cullman, Alabama, about October, 1910. As to what the contract was, I reply that my father owned a little piece of land out there. He come out there and wanted to sell it. Looking for a buyer for it and couldn't get one. He asked $900 for it, and couldn't get anybody to buy it. He made my brother a proposition like this: if he would go in the house and repair the house and barn, and could ever pay him $900, he should have it. That

is what he wanted for it. If he could ever sell it for more, he could have it for what he said, more than $900. So my brother accepted it and went there,—and if he would see after it until he could get a buyer and sell it,—it was a small amount of land for him to be running backwards and forwards. I think it was 53 acres, or 54 acres, as well as I remember. . . In reply to the question as to what, if anything, W. F. Chance did in regard to the contract, I answer, I said he covered one side of the house, repaired the barn, and moved there. I think he stayed on the place a couple of years, two or three years. I was not present when the sale of that property was made. I didn't have any particular conversation with my father about that trade. After he went out there about this land, he come back and told me he had got what Will and Coot owed him, and he wanted the rest of us to come and straighten up with him, he wanted to get his business in better shape. I just told him I couldn't pay him any, and didn't. At that time J. W. Chance Sr. was living at his old home place where he had always lived. I didn't live with him at that time. When he come back and made that statement to me he had been out in Alabama. That was when Coot settled with him, when he made this remark to me. After he paid him for this land, he remarked to me, 'The rest of you boys owe me some, and I would be glad if you would settle with me. I have got what Will and Coot owe me, and I want to straighten up with you boys.' I was not present when the settlement was made between C. C. Chance and my father. But I was present when my father made him a deed. I was present at the time. In reply to the question, did I hear any statement between my father and C. C. Chance, I answer, yes, when he made this deed, Mr. Kinney made the deed, my brother called for his notes, and my father told him where to look for them, my brother Charlie, C. C. We went to his box and didn't find them; and he told us to look in the center bureau drawer, and we didn't find them; and he turned to me and Mr. Kenney and says, 'Charlie paid me for his land, he don't owe me anything; don't make any difference, he has got a 'deed. You all understand if anything ever comes up. You know it is paid and he got his deed, that is sufficient anyway.' We never could find the paper; the note he was talking about. He said it was for the land, this 50 acres of land my brother owned, the land he had pur-

chased from his father. We could not find the notes, and I looked for them afterwards and never could find them." It is insisted that the above testimony was delivered after it was objected to by counsel for movant, and after it had been made to appear that Noel Chance, the witness, was an heir at law of J. W. Chance Sr., the objection being that he was an interested party and was disqualified to testify as to transactions and conversations with J. W. Chance Sr., in a suit defended by the administrator of J. W. Chance Sr. The objection was overruled and the testimony was permitted to go to the jury. We are of the opinion that the evidence objected to is not subject to the criticism made upon it. The evidence does not come within the inhibition of the Civil Code (1910), § 5858, par. 4. The witness was not a party to the suit, and was not testifying in his own interest, but was testifying against his interest. See *Renitz* v. *Williamson,* 149 *Ga.* 241 (2) (99 S. E. 869).

2. In the second special ground of the motion for new trial error is assigned because the court admitted a certain bond for title in evidence, which purported to be as follows: "executed by J. W. Chance to C. C. Chance, in the penal sum of $650, dated November 16, 1905, and obligating J. W. Chance to convey 55 acres of land in the 6th district of Carroll County, Georgia, and being the S. E. corner of lot 294, the purchase-price being $650, and cash payment of $100, balance evidenced by two notes dated November 16, 1905, and due December 1, 1906, for $294.25; and the other due December 1, 1907, for $313.50, purported to be signed on November 16, 1905, by J. W. Chance, and attested by J. S. Dobbs and W. B. Chandler, J. P." Movant's counsel objected on the ground that the execution of the bond for title had not been proved by either of the subscribing witnesses, and their absence was not accounted for, although Noel Chance, one of the sons of J. W. Chance, testified that this was his father's signature. It was not error to admit in evidence the bond for title. It was only incidentally or collaterally involved. The Civil Code (1910), § 5833, par. 4, provides that the subscribing witnesses must be produced in all cases, except where the paper is only incidentally or collaterally material to the case.

<div style="text-align:center">

*Judgment affirmed. All the Justices concur.*