*George G. Finch, C. L. Padgett,* for plaintiff.

22701.   BAKER *v.* LOWE ELECTRIC COMPANY.

260

DECIDED JULY 27, 1933.

*Williams & Freeman, Park & Strozier,* for plaintiff.

*Jones, Johnston, Russell & Sparks, Robert Bruce Jones,* for defendant.

JENKINS, P. J. A corporation was sued for damages on account of injuries sustained in an automobile collision, which occurred about three miles south of Forsyth, Georgia, on account of the alleged negligence of its employee and agent while "on the business of defendant, being on the way from Macon to Barnesville, Georgia, to do certain work for defendant at Barnesville." Plaintiff undertook to introduce the testimony of her husband "that he conferred with Mr. H. E. Lowe, the president of the H. E. Lowe Electric Company (defendant), in the place of business of the company at Macon the day after the accident happened; that he notified Mr. Lowe that he and his wife, the plaintiff in the case, had been damaged by the acts of agents of the company going to Barnesville in an automobile on the business of the company; that Mr. Lowe said that Mr. Atkins and Mr. Lindsey, the men in the car, were the employees of the H. E. Lowe Electric Company; that the automobile was owned by Mr. Atkins and not by the company; that the company paid and was paying for the transportation on the trip; that these men had been to the store the morning of the accident, or possibly the Saturday afternoon before, and had got from the store the materials which they had in the car and which they

were carrying to Barnesville to use on the job for the H. E. Lowe Electric Company; that Mr. Lowe said that Atkins and Lindsey, the men involved, were on the payroll of the company; and that while the witness was talking to Mr. Lowe, Mr. Lowe attempted to reach Mr. Atkins by telephone to confer with him about the circumstances of the accident, but was unable to reach him." The husband of plaintiff had previously testified that immediately after the collision one of the two alleged employees of the company stated to the witness that the two men were on their way to Barnesville to do some electrical work for the company with electrical equipment which they had in the back of their car, and showed these materials to the witness. There was evidence from which the jury were authorized to find that the collision resulted from the negligence of the alleged employee of defendant. The court excluded the evidence as to the alleged admissions of the defendant's president, as hearsay and of no probative value, and granted a nonsuit on the defendant's motion. Plaintiff excepts to these rulings.

The conclusion stated in the 6th headnote has not been reached without some degree of difficulty, and it therefore seems proper to enter upon some discussion of this ruling. The decisions bearing more directly upon the question, as far as we have been able to ascertain, are as follows: *Imboden* v. *Etowah &c. Hydraulic Mining Co.,* 70 *Ga.* 86 (11); *Dobbins* v. *Pyrolusite Manganese Co.,* 75 *Ga.* 450 (3) 452; *Krogg* v. *Atlanta & West Point Railroad,* 77 *Ga.* 202 (44 Am. St. R. 79); *Chattanooga, Rome &c. R. Co.* v. *Liddell,* 85 *Ga.* 482 (2) (11 S. E. 853, 21 Am. St. R. 169); *Louisville &c. R. Co.* v. *Tift,* 100 *Ga.* 86 (3) (27 S. E. 765); *Childs* v. *Ponder,* 117 *Ga.* 553 (2) (43 S. E. 986); *Sizer* v. *Melton,* 129 *Ga.* 143, 148 (58 S. E. 1055); *Happ Bros. Co.* v. *Hunter Mfg. Co.,* 145 *Ga.* 836 (4) (90 S. E. 61).

The testimony excluded in this case was either admissible as part of the res gestæ, admissible as an admission by the adverse party contrary to its interest, or inadmissible as being mere hearsay. Unless it be true that corporations enjoy a special immunity that natural persons do not enjoy whereby they are protected from the use of admissions made by them against their own interest, it would seem that any admission made by the alter ego of the corporation, as distinct from an ordinary servant or agent (see *Wright* v. *Ga. R. Co.,* 34 *Ga.* 330 (3), 337; *Marsh* v. *S. C. R. Co.,* 56 *Ga.* 274;

*Vardeman* v. *Penn Life Ins. Co.,* supra), made in the due course of his official duties with reference to the particular transaction in controversy, should be received in evidence. This idea was strongly expressed by the Supreme Court in the *Imboden* case, 70 *Ga.* 86. The headnote is as follows: "A corporation can only make admissions through its agents, and the admissions of such agents acting within the scope of their powers and about the business of their agency, are admissible." In the opinion the then Chief Justice Jackson said: "Unless such admissions are binding on a corporation, it can not be bound by admissions at all. The only way in which a corporation can talk and admit is by agents. It is dumb as well as deaf by itself, having no organs of speech or hearing except by natural persons as its agents."

In the *Dobbins* case, supra (75 *Ga.* 450), headnote 3 is as follows: "The president of a corporation who manages its business affairs is its active agent, and his admissions and promise to pay a debt of the corporation will bind the latter." It will be seen by reading the facts in that case that the ruling did not refer to the creation of the debt by the president of the corporation, but to his subsequent admission that such a debt had been created. In the *Krogg* case, supra, it was held that the admissions of a general manager of a railroad company, as to the cause of a train wreck, and while in pursuance of his official duties in investigating that question, were admissible in evidence. The decision in the *Liddell* case somewhat criticized but did not overrule the ruling in the *Krogg* case. In the *Liddell* case it is said that the ruling in the *Krogg* case "goes to the extreme limit," and that the admissions which were there proven were a part of the res gestæ. In the *Liddell* case it was held that "Sayings of the president of the construction company which was building and equipping the railroad, made two or three hours after the accident occurred, at another place, to a newspaper reporter, that it would be *to his interest* not to publish too much, that the railroad at the place of the accident had been laid only temporarily, that he had not had time to put the broad gauge ties on it, and did not want public opinion *against him,* etc., were not admissible." In the opinion, the distinction appears to be clearly drawn as to the general rule with regard to the admission of an ordinary agent dum fervet opus, and the subsequent admission of an alter ego of a corporation, merely as admissions. In

that case, the following language was used (italics ours) : "To make the admissions of an agent admissible as against his principal, they must be a part of the res gestæ, *or* must have been made during the performance of the agent's duties. It is clear that the admissions of Williamson were not made as part of the res gestæ. He was not at the place of the accident, and, as said before, it was some two or three hours after the accident when he had the conversation with the newspaper reporter. *And it is equally clear that they were not made when in the performance of a duty to the corporation, or while any duty to the corporation was being performed by him.* It seems to us to have been more in the nature of an application to the newspaper reporter not to publish too much about the accident in his paper, and more in the interest of Williamson individually than of the railroad company." In that opinion (p. 492) the court approvingly quotes as follows: "The mere rank or position of the person, as that he is general superintendent, general manager, general agent, etc., of the principal, is not of itself sufficient evidence of his authority to make the admission, unless it was made with reference to a transaction in which he participated, and under such circumstances as make it part of the res gestæ; consequently *except where made by the agent as and for the principal, and with competent authority,* in order to be admissible they must constitute a part of the res gestæ." (Italics ours.) It will thus be seen that in the *Liddell* case the court squarely and plainly draws the distinction between the rule applying to ordinary agents, whose statements are admissible only as a part of the res gestæ, or, as frequently designated, dum fervet opus, and the rule applying to admissions by the corporation speaking for itself through its alter ego.

As stated in the headnotes in the instant case, it is well recognized in Georgia that the president is presumably the alter ego of the corporation. No such presumption exists in favor of any other official. If a company is to be held responsible for the admissions of a general manager, general superintendent, or other such employee, it must be first shown (as was done in the *Krogg* case) that such person was authorized to speak for and on behalf of his company as its alter ego, and did so while in the due performance of his official duties in connection with the transaction in question. On the other hand, where the official who speaks is shown to be the

president of the corporation, a prima facie presumption arises that he is the alter ego, and if he speaks while in the due performance of his official duties relating to the transaction involved, any admissions thus made by him will be taken as being made by the corporation itself. Many authorities, including the decision in the *Liddell* case now being discussed, view such subsequent admissions, when so made in due course by the alter ego, as part of the res gestæ of the original transaction. In the *Tift* case, supra, it was held that "A letter written by a general agent relating to matters apparently within the scope of his agency is, when pertinent to the issue under investigation, competent evidence in the trial of an action against the principal, and the party offering the letter may prove the agent's admission that he wrote it."

In the *Childs* case, supra, the plaintiff undertook to prove by the declarations of a deceased president of a board of trustees of an incorporated co-educational institute, which kept no minutes of its meeting, that the deceased president had said that the board had said (by resolution at a former meeting) that it recognized the validity of plaintiff's claim. This case appears to be distinguishable from the rules laid down in the previous cases already cited. In the *Childs* case there was no effort—as in the previous cases and as in the instant case—to prove the admissions of the president himself, but merely to prove the declarations of the president as to previous declarations or admissions made by another and different group of officials,—an echo of an echo, so to speak. In the *Sizer* case, supra, it was held that the testimony embodied by interrogatories in other and different litigation by the vice-president and Southern manager of a corporation was not admissible. The court in that case likewise seems to criticize somewhat, but not to overrule, the decision in the *Krogg* case, but seems clearly to recognize, as does the *Liddell* case, the distinction between the general rule applying to admissions of ordinary agents as a part of the res gestæ, and the admissions of an alter ego of the corporation, speaking for and on its behalf while in the due performance of his official duties *pertaining to the transaction in controversy.*

In the *Sizer* case the court said: "The title of vice-president does not in itself imply authority to make admissions for a corporation. The title of Southern manager may imply authority to manage business in the South. But testifying as a witness is not

such a normal part of the lumber business as that testimony given by him as a witness is impliedly an admission of the lumber company."

In the *Happ Bros. Co.* case, supra, the court held: "Parol evidence of admissions of the president of the defendant company, made some time after the making of the written contract sued on, to the effect that the defendant company was bound, were not admissible." So far as the decision goes, it merely holds that the sayings of the president, construing according to his opinion the binding effect of a previous written contract, were not binding upon the corporation. This manifestly does not conflict with the several previous rulings of the Supreme Court upon which the ruling in the instant case is based. *Judgment reversed. Sutton, J., concurs.*

STEPHENS, J., concurs in the judgment.