## NALLEY LAND AND INVESTMENT COMPANY *v.* MERCHANTS AND PLANTERS BANK.

No. 12441. OCTOBER 13, 1938. REHEARING DENIED NOVEMBER 19, 1938.

*Lawton Nalley* and *D. S. Strickland,* for plaintiffs in error.
*Boykin & Boykin* and *Astor Merrill,* contra.

JENKINS, Justice.   In this suit by a payee bank on two promissory notes, signed by the defendant corporation by its president and its secretary-treasurer, and also individually by such officers, whose personal representatives are the additional defendants, the defendants pleaded: (1) that these notes were renewals of two other notes previously executed in favor of the bank, and signed only by a brother of the two officers, Gordon Nalley (who is not a party to this suit) as principal, and by a sister, the secretary-treasurer (whose representative is a defendant) as surety, that the corporation and the two individual signers of the notes sued on executed them upon the understanding with the cashier of the bank that it would procure also the signature of the brother, Gordon Nalley, and it failed to do so; (2) that no money was ever paid by the bank to any one except the brother, under the previous loan and notes, and there was no consideration to the defendants on the present contract of suretyship; and that the defendant corporation, being prohibited by law and its charter from acting as surety on the uncompleted obligation of another person, was therefore not liable.   In reversing the direction of a verdict for the plaintiff bank in a previous trial, this court held that the defendant corporation, under the limitations of its charter, was precluded from acting as surety; and that the evidence was sufficient to present jury questions on both of the defenses filed by the three defendants. *Nalley Land & Investment Co. v. Merchants &c. Bank,* 178 *Ga.* 818 (174 S. E. 618).   These rulings, the pleadings, and a summary of the evidence at the former trial are set forth in the report of that case, where the jurisdiction of this court is made to appear.

1.   Under the act of 1919 (Ga. L. 1919, p. 156), as amended by the act of 1922 (Ga. L. 1922, p. 65), embodied in the Code as § 13-808, "the superintendent of banks was authorized to bring the

present suit either in his own name in his official capacity, or [as he did] in the name of the bank." *Shannon* v. *Mobley,* 166 *Ga.* 430 (1-4) (143 S. E. 582); *Sessions* v. *Bennett,* 155 *Ga.* 193 (116 S. E. 300).

2. Before the act of 1918 (Ga. L. 1918, p. 136; Code, §§ 22-1210, 22-1211), it was the rule in this State, in conformity to the general rule elsewhere (see note, 47 A. L. R. 1380), that "the dissolution of a corporation . . pending a suit against it, abates the action, . . unless some provision is made for the further prosecution of the suit by the laws of the State in which the suit is pending;" and "no valid judgment [could] be rendered against [a corporation] after the expiration of its charter." *Venable* v. *Southern Granite Co.,* 135 *Ga.* 508, 510 (69 S. E. 822, 32 L. R. A. (N. S.) 446); *Logan* v. *W. & A. R. Co.,* 87 *Ga.* 533 (13 S. E. 516). While this act of 1918 does not supersede or render nugatory the provisions of the Code, § 22-1208, authorizing appointment of a receiver for the distribution of the assets of a dissolved corporation (*Elliott* v. *Macauley,* 177 *Ga.* 96 (2, 3), 169 S. E. 358), it does expressly provide, not only that such dissolution shall not work the abatement of any suit pending against the corporation at the time of the dissolution (Code, § 22-1210), but that "suits for the enforcement of any demand or cause of action due by such corporation may to a like extent be instituted and enforced against it in any court having jurisdiction thereof at the time of its dissolution," and also as to the service of such suits. (§ 22-1211). See *Fairfax Building Co.* v. *Oldknow,* 46 *Ga. App.* 281 (167 S. E. 538); *Eady-Baker Grocery Co.* v. *Tenn. Chemical Co.,* 39 *Ga. App.* 121 (146 S. E. 329); *Evans* v. *Fort Valley Motor Co.,* 52 *Ga. App.* 237, 238 (183 S. E. 96); where these changes in the corporation statutes were noted. Therefore the alleged dissolution of the defendant corporation did not render the verdict and judgment against it invalid.

3. On the first of the pleaded defenses, that the notes sued upon were not to take effect until they were signed by the brother of the individual signers, the admitted evidence, unlike that at the first trial, wholly failed to show such an agreement, and therefore on that defense a finding was demanded in favor of the plaintiff against all three of the defendants.

(*a*) "Where any suit shall be instituted or defended by a cor-

poration, the opposite party shall not be admitted to testify in his own behalf to transactions or communications solely with a deceased . . officer or agent of the corporation." Code, § 38-1603 (3). "Where a person not a party, but a person interested in the result of the suit, shall be offered as a witness, he shall not be competent to testify, if as a party to the cause he would for any cause be incompetent." § 38-1603 (4). While, under these sections, "mere personal interest, such as that entertained by a near relative, does not disqualify a witness," and it must appear that there is some "legal or pecuniary interest in the result of the suit" (*Kilchens* v. *Pool,* 146 *Ga.* 229 (5), 231, 91 S. E. 81), and one testifying *against* his interest does not fall within the inhibition (*Reed* v. *Baldwin,* 102 *Ga.* 80, 29 S. E. 140; *Chance* v. *Chance,* 163 *Ga.* 267, 270, 135 S. E. 923; *Hardwick Bank & Trust Co.* v. *Manis,* 181 *Ga.* 498, 183 S. E. 63); yet disqualification results where ownership, possession, or benefits of land may be adversely affected by the suit. See *Dorminy* v. *Russell,* 182 *Ga.* 635, 638 (186 S. E. 679). As to the excluded evidence in support of the first defense that the brother of the individual defendants was to sign the notes sued on, the defendants excepted to the exclusion of his testimony that after the execution of the notes he had conversations with the president, since deceased, of the plaintiff bank, and the president told him; "I had your brother and sister sign this note, and they signed it conditionally that you sign it, because you got the money and they didn't get the money." Under the statutes and the rules stated, this testimony was properly rejected, since it appeared that the plaintiff bank, although suing only on its notes, also held a deed to secure them, executed by the defendant corporation; that this witness held a conflicting deed executed to him by the corporation prior thereto but recorded thereafter; that the witness, having been in possession and enjoyment of the land, held a legal or pecuniary interest in the result of the suit; and that his testimony was in accord with and not adverse to such interest.

(*b*) Nor did the court err in excluding testimony by the brother, that since the defendant corporation executed its deed to him it no longer had any "interest" in the land conveyed. This evidence was not admissible on the contention that the absence of any "interest" in the corporation tended to show that the defendants expected the witness to sign the instruments sued on, since

the proffered statement was a bare conclusion of the witness, the deeds themselves being in evidence to show what were the interests owned or claimed by the grantees; and since, even if the testimony could be taken as more than a mere conclusion, its relevancy was too remote to throw any light on the question as to what the parties actually agreed with regard to the signing of the notes.

'(c) Nor did the court err in excluding testimony by the brother that the cashier of the bank told him that the purpose of obtaining the signature of his sister on the original notes, executed to the bank by the brother and sister, was to relieve the bank's embarrassment in having notes signed only by the brother; and told the sister that she was not to be liable, and the bank did not expect to look to her for payment. Even if the motive of the bank in having the sister sign such notes could be taken as having any relevancy to questions raised by the defenses pleaded, other similar testimony by the same witness was in fact admitted. Furthermore, the part of this testimony offered to show that it was agreed that the sister was not to be held liable on the signed notes was not admissible. See *Johnson* v. *Cobb,* 100 *Ga.* 139, 141 (28 S. E. 72) ; *Haymans* v. *Bennett,* 29 *Ga. App.* 265, 267 (114 S. E. 923).

4. While, in the absence of a new and distinct consideration, a promise to pay a pre-existing debt of another person, without any detriment or inconvenience to the creditor, or any benefit to the debtor or promisor, is a mere nudum pactum (*Davis* v. *Tift,* 70 *Ga.* 52 (2), 56; *Gay* v. *Mott,* 43 *Ga.* 252, 255; *McCrary* v. *Berry,* 51 *Ga. App.* 947 (3), 181 S. E. 814; *McCowen* v. *McCord,* 49 *Ga. App.* 358 (2-4), 175 S. E. 593), whether the contract be one as principal or as surety, yet even in a contract of suretyship a mere extension of time by a creditor to the principal debtor is a sufficient consideration to the surety for his execution of a note renewing the original debt. *Hollingshead* v. *American National Bank,* 104 *Ga.* 250 (2) (30 S. E. 728) ; *Williams* v. *Riley Drug Co.,* 34 *Ga. App.* 68 (128 S. E. 215). It is also true, and not in contravention of the rules just stated, that where by mutual agreement a creditor holding the note of a debtor accepts a third person as substitute for the original debtor, and receives a new note from the substitute in payment or cancellation of the old obligation, this is a novation; the extinguishment of the debt represented by the old note constitutes in itself a valuable consideration for the new

obligation; and the new contract is not one of suretyship. *Dillard* v. *Dillard,* 118 *Ga.* 97 (44 S. E. 885); *Fersl* v. *Bank of Waycross,* 111 *Ga.* 229, 232 (36 S. E. 773); *Dunnaway* v. *Fort,* 50 *Ga. App.* 330 (178 S. E. 163).

5. A cashier of a bank is not excluded by the Code, § 38-1603, "from testifying as a witness in a case to which the corporation is a party, concerning transactions had between such cashier, as agent, in behalf of the corporation, and a person since deceased, whose administrator is the other party to the case." *DeVane* v. *DeVane,* 149 *Ga.* 783, 785 (102 S. E. 145), and cit., including *Ullman* v. *Brunswick Title Guarantee &c. Co.,* 96 *Ga.* 625 (24 S. E. 409), which the court followed and refused to overrule. Accordingly, on the second defense of absence of money consideration and of suretyship, the court did not err in admitting the testimony of the cashier of the plaintiff bank, over the objection that it related to transactions with a deceased party, whose representative is a defendant.

6. Assuming that a corporation would be held bound by admissions of its president within the scope of and during the conduct of his ordinary executive duties (*Baker* v. *Lowe Electric Co.,* 47 *Ga. App.* 259 (5, 6), 170 S. E. 337, and cit.; *Franklin Savings & Loan Co.* v. *Branan,* 54 *Ga. App.* 363 (3), 366, 188 S. E. 67), and that under this rule any admissions in his testimony should be taken and construed most strongly against the corporation of which he is president, where it is a party to the case, and where his testimony is contradictory, vague, or ambiguous (*Southern Ry. Co.* v. *Hobbs,* 121 *Ga.* 428, 49 S. E. 294; *Clark* v. *Calhoun National Bank,* 53 *Ga. App.* 691 (6), 693, 187 S. E. 304); still such rules would not ordinarily be so extended to testimony by a cashier of a banking corporation as to bind such a defendant under the rules governing admissions in judicio. See, as to the testimony of a vice-president, *Sizer* v. *Melton,* 129 *Ga.* 143 (3, 4), 148 (58 S. E. 1055). Accordingly, on the second defense stated, a finding in favor of the defendants was not demanded on account of the ambiguous testimony of the cashier of the plaintiff bank on the question as to whether the defendants signed the notes sued on as sureties, or as an original transaction and novation in cancellation of the original notes.

7.(a) On the second defense of suretyship and lack of a money consideration, under the preceding rules as to suretyship and as to the testimony of the cashier of the plaintiff bank, the undisputed evidence demanded a verdict against the individual defendants, since it showed that their brother received from the plaintiff the money on the previous notes signed by him and his sister; that, under any view of the evidence, the new notes at least extended the time of maturity of the previous notes; and therefore that as to the individual signers such extension was sufficient to validate the contract, even if the agreement were taken as one of suretyship.

(b) As to the plea of suretyship by the corporate defendant, and the question thereunder whether the new notes constituted a substitution and extinguishment of the old debt, or merely an extension of the maturity, upon the same pleading and substantially the same evidence on that question in the former case, it was held that "under the pleadings and the evidence, it was a question for the jury to decide whether or not the corporation was lending its credit on commercial paper to a third person, the evidence on this issue being conflicting." 178 *Ga.* 818 (4). The court being bound by that ruling as the law of the case, it is not necessary to decide whether or not, under the evidence offered in behalf of the defense actually pleaded (to wit, that the obligation of the defendant was that of a surety, and for that reason illegal and unenforceable), other and different defenses, setting up ultra vires acts other than that of becoming a surety, might have been made.

8. The court charged to the jury the contention of the defendant corporation that the notes sued on were an unauthorized surety debt for which it could not be held liable. Immediately thereafter the court charged that if the jury found in favor of this contention, they should find for the defendant; but that if they found that the notes were given by the corporation and the other defendants "as an original promise . . in settlement of a prior note, and that these defendants received a consideration, any consideration whatever, in executing this paper, and the paper was executed as their promise . . and the consideration was a settlement of matter between the parties in other transactions or other notes, and that Gordon Nalley [the brother] was not to sign the paper," they should find in favor of the plaintiff. These instructions sufficiently covered the defenses actually pleaded and relied

upon, and were in substantial accord with the foregoing rules. The additional statement that the consideration might be the settlement of "an old dispute or an old lawsuit or an old business matter," and such a contract would be "binding, if it is their original contract, and Gordon Nalley was not to sign it," was essentially correct, and the slight inaptness of reference to "an old dispute or an old lawsuit" could not be taken as reasonably prejudicial.

9. Exception is taken to the use of the word "of" in the following instruction: "If you find that this is a surety debt *of* Gordon Nalley, and is not an original promise or debt of the Nalley Land & Investment Company and Drusilla Nalley and W. J. Nalley, . . then you would find for the defendant." There is no merit in this exception, since the use of the word "of" instead of the word "for" or its equivalent, preceding the name of the principal on the first notes executed by him and his sister, could not, in view of the context and clear instructions on the question of suretyship, have misled the jury.

10. The judge charged, as to the burden of proof, that a prima facie case was made for the plaintiff upon its introduction of the notes sued on, and that the defendants must carry the burden of setting up their defense by a preponderance of the evidence. He then charged, in accordance with the Code, § 38-106, that "they must convince you by that superior weight of evidence which, while it may not be sufficient to incline your minds from a reasonable doubt, must be sufficient to incline your minds to one side of the issue rather than the other, to their side rather than the other." Exception is taken to the statement, which he immediately added, that "if the evidence is about equal on each side, then the defendant has not carried the burden, and you will find for the plaintiff," on the ground that the words "about equal" erroneously effaced and abridged the preceding language, and stated an "inapt, vague, indefinite, uncertain, and incorrect" criterion or standard for determining the preponderance of evidence. While the words complained of were inapt, they can not reasonably be taken to have misled the jury, in view of the context and the general charge. See *Jones* v. *McElroy,* 134 *Ga.* 857 (4), 860 (68 S. E. 729, 137 Am. St. R. 276). *Judgment affirmed. All the Justices concur.*

ON MOTION FOR REHEARING.

JENKINS, Justice. The sole ground of the motion for rehearing

is that the defendant corporation, in addition to denying liability upon the notes sued on, pleaded that a deed given to secure such notes was null and void, and prayed that it be canceled as a cloud on title, and that its record in the clerk's office be canceled. See statement of pleadings on the first review of this case, 178 *Ga.* 818. Therefore the movants contend that since this pleading and prayer converted the suit into one of equitable nature, giving jurisdiction of the writs of error to this court instead of the Court of Appeals, it was harmful error to movants, defendants in the court below, not to have charged the jury as to this prayer. Since the defendants would not have been entitled to this affirmative relief unless the jury found in their favor upon the defensive grounds on which the prayer was based, and since the jury found against the defendants upon those grounds in returning a verdict for the plaintiff, the failure to charge as to the affirmative prayer necessarily was harmless to the defendants. See *Lewis Mfg. Co.* v. *Davis,* 147 *Ga.* 203 (4) (93 S. E. 206); *A., B. & A. Ry. Co.* v. *Sumner,* 134 *Ga.* 673 (4) (68 S. E. 593), and cit.; *Trammell* v. *Atlanta Coach Co.,* 51 *Ga. App.* 705, 707 (181 S. E. 315). *Rehearing denied.*