**L. A. WOOD & CO. et al. v. TAYLOR.**
**No. 11503.**

Circuit Court of Appeals, Fifth Circuit.

April 2, 1946.

Rehearing Denied May 17, 1946.

SIBLEY, Circuit Judge, dissenting.

———◆———

James Maddox, of Rome, Ga., Wm. A. Ingram, of Cartersville, Ga., and James E. Rosser, of La Fayette, Ga., for appellants.

Dean Owens, of Rome, Ga., and C. C. Pittman, of Cartersville, Ga., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

A. B. Taylor sued L. A. Wood, L. A. Wood & Company, a corporation, and Charles B. Randolph for personal injuries he sustained on the highway as the result of an accident.

The important facts are these: On a day in January, 1944, the plaintiff, Taylor, was riding a bicycle along the Tennessee

highway in Bartow County, Ga., on his way to lunch. L. A. Wood and Charles B. Randolph were riding in an automobile which was the property of L. A. Wood & Company, and was being driven by Randolph and was in and about the business of L. A. Wood & Company.

At a point near a store and filling station Randolph attempted to pass Taylor and the car and bicycle collided and Taylor was sorely injured. Taylor's explanation of the accident was that he was riding on his right side of the highway when something struck him in the back; that he heard no horn sounded; received no warning; and the first thing he knew was when he regained consciousness in a hospital the next day. L. A. Wood testified that as Randolph attempted to pass Taylor he suddenly swerved his bicycle into the car and was thereby injured. Wood had invited Randolph, a Ford salesman, to travel with him. After they had traveled several miles, Wood requested Randolph to drive the car for him. There is no dispute that L. A. Wood was the president of the L. A. Wood & Company corporation; that on the day in question and at the time of the accident the automobile was being used in and about the business of the company; that Wood requested Randolph to drive for him; that the day was clear, visibility good, the road straight; and that the time of the accident was about noon. Wood further testified that the car was being driven at the time at about a speed of 20 to 25 miles per hour. Two highway patrol officers, who arrived shortly after the accident and who testified as witnesses for defendants, examined the car and the bicycle at the place of collision, measured the road and found that the automobile had skidded or made marks by the application of the brakes for a distance of 110 feet after the collision, and that the car finally turned almost entirely off the highway and stopped. Both officers gave as their opinion, without objection, that the automobile was traveling at the time of the accident at a speed of approximately 50 miles per hour. Witnesses for the plaintiff testified that the car was "going fast." One witness estimated the speed at 55 miles per hour and another at 60. One of the handles on the door of the automobile was broken off by the impact and driven into the back of the plaintiff. It is further without dispute that the plaintiff's right side was paralyzed; that he suffered much pain and was permanently injured.

There was no issue as to jurisdiction. The court directed a verdict for L. A. Wood, individually, which left as defendants Randolph and L. A. Wood & Company, and the case was tried to a jury.

There was no error in the court's refusal to give the charge requested by the defendants as to the duty of the plaintiff to give a signal if and when he was turning from the highway to the right or left. The evidence on this question was sharply in conflict, the plaintiff testifying that he was going straight ahead when he was stricken and the two witnesses Wood and Randolph testifying that he suddenly swerved to his left. Therefore, the charge was clearly argumentative. Moreover, it was covered by the court's oral charge.

There was abundant evidence to support the verdict of the jury. It was open to them to find that L. A. Wood was the president of L. A. Wood & Company, a corporation; that as president of the company he was making a trip to Cartersville, Ga., on business for the company; that Randolph was driving the automobile at the request of Wood at the time of the accident; that Wood was seated by Randolph on the front seat of the Cadillac car when they attempted to pass Taylor on his bicycle; that Randolph was driving very fast, taking into consideration the place of the collision; that Randolph did not know that he had collided with the bicycle until Wood told him, "That man hit us"; and he then applied the brakes; that the concrete road showed brake or skid marks 110 feet from the place of the accident; that Randolph in passing the bicycle cut back too soon and thereby caused the handle of one of the doors to strike Taylor in the back.

The explanation of counsel for defendant as to how the accident occurred will disclose, we think, in some sort, the speed of the automobile: "Since Mr. Taylor's injury was in the back, appellants respectfully insist that there is no way to consider all of the evidence on the subject and reconcile it with the point of injury on Mr. Taylor's body, except by accepting Mr. Wood's evidence to the effect that the bicycle did pivot and swerve into the car, thus turning the rear of the bicycle and

Mr. Taylor's back into the side of the automobile."

If the jury were to follow this explanation they would be required to find that the bicycle pivoted or backed into the automobile which was traveling at a speed of 50 miles or more.

■ The court further charged the jury: "Defendant Randolph would be liable for his own negligence, and' the defendant corporation, L. A. Wood & Company, would also be liable for the acts done by Randolph while acting as its agent within the scope of his authority, as it is stipulated that Randolph was acting as the agent of L. A. Wood & Company in this case, while driving the automobile at the time of the collision."

The court predicated the giving of this charge on the following stipulation: "It is agreed by the parties that the automobile in question was the property of L. A. Wood & Company, and at the time of the accident it was engaged in the business of the company."

We are of opinion that the court was warranted in interpreting the stipulation to mean that since the automobile was "engaged in the business of the company" at the time of the accident, then certainly Randolph, who was then and there driving the car, was the agent of the company.

■ If the stipulation does not mean what the court interpreted it to mean, then it is ambiguous, and the court should not be put in error by ambiguities in the stipulation. Clason v. Matko, 223 U.S. 646, 32 S.Ct. 392, 56 L.Ed. 588.

■ Wood was the president of the company. He was on a trip for the company as president. The automobile was the property of the company. Randolph was invited by Wood, who was then and there acting as president, to ride and drive the automobile for him. It is well settled under the law of Georgia that the president of a corporation is its alter ego, presumptively in charge of its affairs, and with the power to act for it within the scope of its ordinary business and his usual official duties. Franklin Savings & Loan Co. v. Branan, 54 Ga.App. 363, 188 S.E. 67, and cases there cited; Section 22-712 Georgia Code.

■ The case of White v. J. E. Levi & Co., 137 Ga. 269, 73 S.E. 376, which is relied upon heavily by the defendants, and also that line of cases cited for them in brief, have factual backgrounds entirely different from the facts of the case with which we have to deal. Here, the president of the corporation was in the automobile and in charge and about the business of the company. See the cases of McGhee v. Kingman & Everett, 49 Ga.App. 767, 176 S.E. 55; Baker v. H. E. Lowe Electric Co., 47 Ga.App. 259, 170 S.E. 337; 5 Am.Jur. § 383, p. 721.

The court gave to the jury a very full and fair charge covering every phase of the case.

We find no reversible error in the record, and the judgment is

Affirmed.

SIBLEY, Circuit Judge (dissenting).

Vital error against the corporate defendant was committed in charging the jury: "Defendant Randolph would be liable for his own negligence, and the defendant L. A. Wood and Co. would also be liable for acts done by Randolph while acting as its agent within the scope of his authority, as it is stipulated that Randolph was acting as the agent of L. A. Wood and Co. while driving the automobile at the time of the collision". Timely objection was made by the corporation that there was no such stipulation nor any such evidence, and the stipulation was read to the judge "that the automobile in question was the property of L. A. Wood and Co. and at the time of the accident was engaged in the business of the company". Wood's testimony is undisputed that he was the president of the company driving the automobile to Cartersville, Ga., on an errand of the company, that Randolph was not an employee of the company but was riding at Wood's invitation, and that Wood a short time before the accident asked Randolph to drive some. The judge adhered to the charge, thinking the facts made Randolph the company's agent as a matter of law.

The judge was not misled by an ambiguous stipulation, but his attention was distinctly called to his misunderstanding of it, and he refused to correct the charge.

No one contends that the mere ownership of the automobile makes the company liable. There was nothing wrong with' the car. No negligence was found in Wood into whose charge the car was committed; he was absolved personally. Randolph alone was found negligent in running the car

suddenly against the bicycle. The company was held liable on the ground that Randolph was the agent of the company acting within the scope of his authority, which the judge told the jury was a stipulated fact.

Randolph was never the agent of the company unless Wood's request that he drive appointed him such. Whether such a request by an agent in charge of an automobile results in charging the principal has been diversely decided. 5 Am.Jur., Automobiles, §§ 382, 383. In Georgia it has long been settled that it depends on the authority of the first driver to employ the second, or on ratification by the principal, and that unless authority or ratification is shown, the principal is not liable for the negligence of the second driver. White v. J. E. Levi & Co., 137 Ga. 269, 73 S.E. 376. Samples v. Shaw, 47 Ga.App., 337, 170 S.E. 389. There may be an implied authority when an emergency renders necessary the aid of another. McGhee v. Kingman & Everett, 49 Ga.App. 767, 176 S.E. 55, one judge dissenting. The general rule is, Delegata potestas non potest delegari.

The law of Georgia governs a tort committed in Georgia and ought to be applied by this federal court in a suit removed to it because of diversity of citizenship. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

Is it shown that Wood had authority to choose and appoint another driver for the company? There is no proof on the subject except that he was president. The record shows only the order of removal of the case, and it does not appear of what state L. A. Wood and Co. is a corporation, but there could not have been a removal if it were a Georgia corporation. It would seem that the law of Georgia as to the powers of a president would not be controlling, but the law generally recognized would be. According to the general law the president, by virtue of his office, has no authority save to preside at corporate meetings and to represent the corporation in court proceedings. Any further authority comes from statute, or from by-laws adopted by the stockholders, or from the directors, or from the course of business suffered to be done by him. 19 C. J. S., Corporations, § 752. The power to select agents and employees is in the directors, and the president has not that power unless conferred on him. Id., § 1048.

If the law of Georgia be important on this point, I think it is this: By statute since 1938, Georgia Code, Supplement, Sect. 22-1869, "Every corporation shall have a president (who shall be a director), a secretary, and a treasurer, and such other officers as may be provided for in the character or an amendment thereof or in the bylaws. They shall be chosen in the manner and for the terms provided in the bylaws and have such powers and duties as may be prescribed by the bylaws or the board of directors." The statute as to powers and duties is, I think only declaratory of the general law which before obtained. All the Georgia cases cited in the majority opinion were decided prior to the statute. The Supreme Court has always held that the president as such could not sell corporate property or make corporate contracts, unless such business had been entrusted to him. Bank of Lenox v. Webb Naval Stores Co., 171 Ga. 464, 156 S.E. 30, and the many cases therein reviewed. I have found no case as to his power to employ persons for the corporation. The talk about the president being the corporation's alter ego has been in reference to his being a proper person to serve with judicial process, Third National Bank v. McCullough, 108 Ga. 249, 33 S.E. 848, or his ability to make admissions which will be evidence against the corporation in court. Franklin Savings & Loan Co. v. Branan, 54 Ga.App. 363, 188 S.E. 67. These seem to be corollaries to the president's power and duty to represent the corporation in its litigation. These cases relate to presidents of banks, and under the Constitution and laws of Georgia banks stand on a different footing from ordinary corporations.

The plaintiff here, if he would hold the corporation liable, had the burden of proving that Randolph was its agent in driving the automobile, which means that Wood had authority to appoint him such. I do not think the bare fact that Wood was president showed such authority as a matter of law.