KROGG *vs.* THE ATLANTA AND WEST POINT RAILROAD *et al.*, and *vice versa*.

1. In a suit against two railroad companies, testimony was offered that the general manager, who had full control of the roads and all the employés upon them, and who had no superior officer as to the management of the cars, engines and tracks, and whose duty it was to know everything connected with the road and to keep everything in proper order, was informed by the conductor of a train on which he was riding that the train on which the plaintiff was at work had been wrecked and where it had occurred, and thereupon remarked that he had told the roadmaster that those curves were too high; also that he went to the scene of the wreck, and after examining as to its cause, and while pursuing his investigations, went to the plaintiff, who was the engineer of the wrecked train, and asked him what, in his opinion, caused the wreck; that the

plaintiff said he thought it was a broken rail, but was not positive; that the general manager said that the plaintiff was mistaken; that the plaintiff asked him, as he had made an examination since the wreck, what, in his opinion, caused it, to which the general manager responded that it was too much elevation on the curve; that the plaintiff asked if he was positive about it, to which the general manager responded, yes, he knew it, and that thereafter he would remedy that, and would have no more such accidents from that fault:

*Held*, that these admissions or statements of the general manager were admissible in evidence. He was the *alter ego* of the corporation in this matter. His statements as to the condition of the road were made while in the line of his duty, it being his business to know the condition of the road, and upon being informed by an agent of the road of the wreck, what he then said was *dum fervet opus*. It was admissible also as showing knowledge of the corporation as to the improper construction and condition of the road before the accident.

(*a.*) The statements of the general manager to the plaintiff were admissible further as part of the *res gestæ*, it being his duty to investigate the cause of this disaster, and such statements being made while he was pursuing his inquiries.

(*b.*) The grant of a new trial, on the ground that such evidence should not have been admitted, was erroneous.

2. This court is not bound by the interpretation of the common law made by the courts of Alabama, although the injury for which suit is brought occurred in that State, but this court will decide what is the common law. As to the construction which the courts of that State place upon its own statutes or other local laws bearing upon the case, this court will follow their decision.

(*a.*) What the decisions of the courts of Alabama are on the question of the liability of the master for an injury done to one servant by the negligence of another, and who are fellow-servants, is left in some doubt.

3. A fellow-servant is one employed about the same work with the servant injured and whose negligence caused the injury to the servant complaining.

4. If a railroad company knows of the improper construction of its road-bed, and that the cross-ties and other superstructure are rotten, and if the company fails to make suitable repairs, this is negligence on its part, and it will be liable for any injury that might occur on that account to any one, whether a servant of the corporation or not, notwithstanding that the failure to repair was owing to the negligence of the general manager and superintendent of the road, or the road-master or section-boss. If the unsoundness of the roadway be known to the officers of the company who

arc charged with the duty of repairing it, this would be notice to the corporation.

5. While as to a right of action given by the statutes of Alabama, the statute of limitations of that State might apply to an action brought in Georgia, yet where a right of action arose at common law, such would not be the case, but the statute of limitations of the place where suit was brought would govern.

6. While in one part of the charge the judge erroneously stated that the jury would be authorized to reduce the damages if they saw proper, yet in other portions of the charge this inaccuracy was corrected, and no harm resulted from it.

October 12, 1886.

Evidence. Master and Servant. Railroads. Principal and Agent. Comity of States. Statute of Limitations. Charge of Court. Construction. Before Judge VAN EPPS. City Court of Atlanta. June Term, 1886.

Fred. Krogg brought an action for damages against the Atlanta and West Point Railroad Company and the Western Railway of Alabama, alleging, in brief, as follows: In 1882, he was employed in Atlanta by the defendants jointly as a locomotive engineer to run between Atlanta and Montgomery on the line formed by the roads of the two defendants. While thus running, on March 2, 1883, his engine was thrown from the track at or near Cusseta, Alabama, without fault on his part, and he was permanently injured, etc. The negligence of the defendants consisted in having the elevation of the curve at the point too high for safety, and in having a broken rail and rotten cross-ties. The track was otherwise in an unsafe condition, and the defendants and their agents were negligent.

On the trial, the evidence was voluminous and need not be set out in detail. So far as necessary to illustrate the assignments of error, that on behalf of the plaintiff showed, in brief, as follows: The two roads were controlled by the same general manager, paymaster and general officers, and ran through trains from Atlanta to Montgomery, employing jointly the same conductors and engineers, using the same engines and cars and having a common pay-roll. In

1882, the plaintiff was employed by the defendants as an engineer, and on March 2, 1883, at night, near Cusseta, Alabama, his engine left the track, breaking the train and injuring him and others. This occurred on a curve, the elevation of the outer rail of which was too high, being about five inches, when it should have been one and five-eighths inches for a train running thirty miles an hour, which was a fast schedule for that line. After the catastrophe, the elevation on this and other curves was reduced. A number of cross-ties here were rotten. The section-master stated that he considered the track at that point in safe running order, but it was not in first-class condition, that it had been about a year since he put new ties in that portion of the track; that it was the custom to do this about once a year; that he had applied to the road-master before the accident for more cross-ties, but did not receive them; and that, shortly after the accident, the general manager and road-master walked over that section of the track, and after that he received new ties. Cecil Gabbett was the general manager and the highest officer in Alabama and had charge of the running of the roads, the control of employés and the care of the track. He was asked, "Is it your duty to know all about everything going on?" and answered, "Yes, sir." Also, "And to keep everything straight?" Answer, "Yes, sir." The president had nothing to do with managing the road. On the night of the injury, Gabbett was on a train going from Atlanta to Montgomery, and at West Point was asleep in a car. The conductor, Sandwich, testified that about ten o'clock he went into the car where Gabbett was, woke him and told him of the wreck of the plaintiff's train; and Gabbett remarked that he had told the road-master that those curves were too high. He then took a car and went to the wrecked train, and on arriving there made an examination of it and of the track, etc. The plaintiff testified that after this, Gabbett came into a car where he and a mail agent, Hester, were lying, injured, and asked plaintiff what, in his

opinion, caused the wreck. Plaintiff replied that he thought it was a broken rail, but was not positive. Gabbett replied, "You are mistaken." Plaintiff then asked what, in Gabbett's opinion, caused the wreck, as he had made an examination, and he replied, "It had too much elevation on the curve." Plaintiff asked if he was positive about it, and he replied, "Yes, I know it; hereafter I will remedy this, and have no more accidents from that source." Hester swore that he was the mail agent; that he also was lying in the car near the plaintiff, and heard Gabbett say he thought the cause of the accident was, the elevation was too high.

The testimony for the defendants conflicted with that of the plaintiff in many particulars. Gabbett denied the conversations attributed to him; and evidence was introduced to show that if the outer rail of the curve had been too high, the engine would not have been (as it was in fact) thrown off on that side; and much evidence was introduced as to the condition of the road-bed and track. There was also conflicting evidence as to the extent of the injury, and whether the plaintiff's condition was the result of such injury or of disease.

The jury found for the plaintiff $15,000. The defendants moved for a new trial on many grounds. The following, which are stated in substance, will serve to explain the points decided:

(1)–(3.) Because the verdict was contrary to law and evidence and without evidence to support it.

(4.) Because the verdict was excessive.

(5.) Because the court refused to grant a nonsuit as to the Atlanta and West Point Railroad Company.

(6.) Because the court struck a plea of the statute of limitations, filed by the defendants, which set out that the injury happened in Alabama; that the statute of limitations of that State required suits for personal injuries to be brought within one year of the time of their occurrence. The court held that the law of Georgia, and not that of

Alabama, was applicable as to the limitation of the action, and struck the plea and rejected testimony offered under it.

(7.) Because the court erred in charging the jury in the following language: "If you believe from the evidence that the plaintiff, on the 2nd day of March, 1883, was a joint servant of these two defendants, under contract with them to drive an engine on the line of their road from Montgomery to Atlanta, and that while in the line of his duty, and without fault on his part, while driving his engine along the track, near Cusseta, Alabama, said engine was thrown from the track because of defendants' negligence in failing to provide a suitable track or to keep said track in reasonably safe and good condition for the passage of the train of cars thereon, but that plaintiff was injured thereby, and has sustained damages, then the plaintiff is entitled to recover such amount in damages as will compensate him for his injuries thus inflicted. The jury is instructed that the law is, that one who is the joint servant of two employers, and is injured in such service, has his election to sue either or both of his employers." The error in this charge consists in the failure of the court to point out to the jury that the road guilty of the negligence causing the injury would alone be liable; and in charging that both defendants would be liable, the evidence in the case failing to show that the Atlanta and West Point Railroad, its servants, agents or employés were guilty of any fault or negligence causing the accident.

(8.) Because the verdict of the jury is contrary to the following charge of the court: "If you believe from the evidence that such alleged defects existed, and that Arrington, the section-master, or any other subordinate officer of the company who did not represent its personality and stand as its substitute, knew of such defects and failed to repair them or to communicate them to the company, and the company was not negligent, the plaintiff could not recover. For all such casual or incidental or accidental

acts of negligence or omission of duty by a fellow-servant, the master is exempt; it is a risk of the employment."

(9.) Because the court erred in making the following charge: " If you believe from the evidence that Mr. Gabbett was the superintendent and general manager of defendants, and that as such he represented a function of the company in the executive control and supervision of all its departments, and through the heads of departments exercised a superintendence over all of the defendants' operatives and internal business and affairs, the machinery and appliances of the company, then Mr. Gabbett, for all purposes of notice and knowledge of defects in such machinery and appliances, would represent the personality of the company, and would stand in law as its substitute." The error in this charge consists in telling the jury that knowledge of defects in machinery, etc. of defendants by Gabbett is the knowledge of the defendants, and that notice in him is notice in the defendants for which they would be liable.

(10.) Because the court erred in making the following charge: " It would also be proper for you to take into consideration the condition of the plaintiff as to health and soundness when injured, and if you find from the evidence that disease or other injuries had made inroads upon his health at that time, and are still operating and in part contributed to the present impairment of his abilities which he claims to suffer, you would be authorized to make a still further reduction on that account, if you saw proper to do so, and you might consider any other fact or circumstance, if shown in the evidence or founded upon your observation and experience, which would properly tend to affect your estimate of the probable future of the plaintiff had he not been injured."

(11.) Because the court erred in refusing to charge the following: " Mr. Cecil Gabbett, the general manager of the defendant corporation, is not, in law, the defendants themselves, nor would the defendants be liable in this ac-

tion for any act or opinion of his done or expressed in the discharge of his duty as general manager or superintendent."

(12.) Because the court refused to charge as follows: "Notwithstanding the fact, if it be a fact, that Arrington may have applied to Hughes for cross-ties and was refused, yet if it be a fact that the defendant had placed at Hughes's disposal an ample supply of ties, and the failure to furnish Arrington was due to Hughes's negligence or inattention, then this was the negligence of a fellow-servant, for which the defendants are not liable."

(13.) Because the court erred in refusing to charge the following language: "Under the laws of Alabama in force at the time of said injury, the general superintendent and manager of a railroad, as well as the road supervisor, the section-master and the conductor of the construction train which carried material to keep in repair the track of a railroad, are each and all fellow-servants with the engineer on a passenger train, and if an engineer of a passenger train was injured by the carelessness or neglect of duty of either or all of said officers or employers, done or suffered in performance of their duties as such officers, then the defendant corporations would not be liable therefor, unless the said officers or agents be shown by evidence to be unfit for their respective positions; or unless it be shown that the defendant failed or refused to furnish proper and sufficient material to safely and properly operate their railway."

(14.) Because the court erred in refusing to charge the following language: "The fact, if it be a fact, that Cecil Gabbett, the general manager of the defendant corporations, may have expressed an opinion that the accident which injured plaintiff was caused by an improper elevation of the outer rail of the curve where the accident occurred, is not, within itself, sufficient to fix a liability upon the defendants for said injury; especially is this the law, should the evidence show that the said improper ele-

v 77-14

vation, if there was such, would have caused the engine to leave the track on the opposite side thereof from that on which it did leave the same."

(15.) Because the court erred in refusing to charge the following language: " The fixing of the elevation of curves is not such a function as could properly be performed by the defendant corporations as such, but is such a duty as is required to be performed by servants or employés of the defendants; and if there be any neglect or misconduct in this particular, the law of Alabama, which governs this case, will attribute it to the said servants or employés and not to the corporations themselves, and the defendants are not liable therefor, unless they had notice thereof in time to have the same remedied, and notice thereof to a fellow-servant or co-employé with the plaintiff would not be notice to the defendant."

(16.) Because the court erred in charging the jury as follows: " In such cases, the plaintiff would owe the duty to his common employés to drive the engine over the entire way with care and skill, as joint servants of both under their arrangement with him; and the two defendants would owe to him the correlative duty of furnishing to him machinery and appliances adequate and proper for the use to which it was to be applied and to maintain it in like conditions over the whole way."

(17.) Because the court erred in charging the jury as follows: " The superintendent or immediate representative and managing agent of a corporation, who is entrusted with the exercise of a function of the companies which, in the nature of the case, the stockholders or board of directors, in their aggregate capacity, could not efficiently exert, and under whose supervision and orders its affairs and business, in all of its departments, is conducted, stands as a substitute for the corporation. He represents its legal personality. Notice to him is notice to the corporation. Knowledge in him, actual or imputable from the circumstances, is knowledge in the corporation. Negligence in him, in respect of

the duties he is called upon to discharge by virtue of his position as the executive officer of the corporation, is the negligence of the corporation itself."

(18.) Because the court erred in admitting the following evidence by Fred. Krogg, plaintiff, over the objection of defendants, the same being a conversation between witness and Cecil Gabbett: Witness told Gabbett that he thought a broken rail caused the wreck. Gabbett replied, "You are mistaken; it was too much elevation on the curves." This evidence was objected to on the ground that an admission by Gabbett, made after the accident, could not be given in evidence to bind the defendants, the same not being a part of the res gestæ. This conversation occurred not less than five or six hours after the accident.

(19.) Because the court erred in permitting James G. Hester, a witness for the plaintiff, to testify, over the objection of defendants, as follows: "I was present in the postal car with plaintiff after the injury, and heard Gabbett tell Krogg that he thought the cause of the accident was the elevation of the road on one side, the higher elevation on one side."—Objected to on the ground that an admission by Cecil Gabbett as to the cause of the accident, not being res gestæ, was not admissible to bind the defendants, and this conversation, or these admissions, were made five or six hours after the accident.

(20.) Because the court committed error in allowing W. D. Sandwich, a witness for the plaintiff, to testify, over the objection of defendants, that he heard Cecil Gabbett say, on the night of the accident, to plaintiff, that he, Gabbett, had told the road-master that those curves were too high. This conversation occurred several hours after the accident.—Objected to because the sayings of Gabbett were inadmissible to bind the defendants, not being a part of the res gestæ.

The motion was sustained on the 18th ground only, and the plaintiff excepted. The defendants filed a cross-bill of

exceptions, assigning error on the refusal to grant the new trial upon all the grounds taken in the motion.

HOPKINS & GLENN, for plaintiff.

BIGBY & DORSEY ; GEO. P. HARRISON, Jr., for defendants.

BLANDFORD, Justice.

1. The question presented by the original bill of exceptions and record is, was the court right in granting a new trial upon the ground alone of the admission of the statements of Cecil Gabbett in evidence against the defendants ? One of these statements was, when Gabbett was at West Point asleep upon the train *en route* to Montgomery, he was informed by the conductor of that train that Krogg's train had been wrecked, and of the place where it had been wrecked. Gabbett remarked, " that he had told the roadmaster that those curves were too high." Gabbett was the general manager of both roads, with his residence at Montgomery ; he had full control of the roads, also of all the employés for the cars, engines and the track; there was no officer above him in this regard ; it was his duty to know everything about the road and to keep everything straight. Gabbett went to the wreck, and after examining as to its cause, and while pursuing his investigations, he went to the plaintiff, who was the engineer of the train when wrecked, and who had been seriously hurt, and asked him, " what, in his opinion, caused the wreck?" Krogg told him, " he thought it was a broken rail, but was not positive." Gabbett replied, " You are mistaken." Krogg then said, " As you have made an examination," since the wreck, what, in his opinion, caused the wreck ? Gabbett said, " It had too much elevation on the curve." Krogg then asked, " Are you positive about it ?" Gabbett said, " Yes, I know it. Hereafter I will remedy this, and have no more such accidents from that fault."

This court is of the opinion that these admissions or

statements of Gabbett, the chief manager of the property, road-bed, etc. of the corporation, were properly admitted under the facts of this case. He was the *alter ego* of the corporation in this matter. His statements as to the condition of the road were made while in the line of his duty, it being his business to know the condition of this road, and upon being informed of the wreck by an agent of the road, what he then said will be considered as having been said *dum fervet opus;* the work was then hot with him and his statements then as to the cause of the accident were virtually the statements of the corporation itself. It was further admissible as showing knowledge of the corporation as to the improper construction and condition of the road before the accident. The statements of Gabbett to Krogg as to the cause of the wreck were admissible, not only for the reasons already stated, but upon the ground that they were part of the *res gestæ.* It was Gabbett's duty to investigate the cause of this disaster, and while he was pursuing his inquiries actually thus engaged, he made the statement to Krogg already set out. This was virtually the ruling of this court in 34 *Ga.* 337; 56 *Ga.* 276. *Imboden vs. Etowah and Battle Branch Mining Company*, 70 *Ga.* 88; *Edwards vs. Cotton States Life Ins. Co.* 74 *Ga.* 220; *Dobbins vs. Pyrolusite Manganese Co.*, 75 *Id.* 450; *Georgia Railroad Co. vs. Smith, Gov.*, 76 *Id.* 634.

We do not mean to say that the general rule is not as that contended for by the able counsel for plaintiff in error, to-wit, that a railroad company is not bound by the admissions of an agent as to an occurrence after the same has taken place, but we think that that rule is subject to the qualifications already stated. If the agent be in the performance of a duty of the corporation, while thus performing that duty, what he says as to any defect in the structure of the road is *res gestæ* as to such defect, and his admissions are the admissions of the corporation. So we think that these statements of Gabbett were properly admitted in evidence by the court below, and that the court

erred in granting a new trial on the ground that there was error in the admission of this evidence, and the judgment is reversed.

2. The cross-bill of exceptions raises many questions, and it is insisted that the law, as declared by the Supreme Court of Alabama, is the law of this case, although that law be the common law. What the decision of that court may be on the question of the liability of the master for an injury done to a servant by the negligence of another servant, and who are fellow-servants, is left in doubt by the decisions of its Supreme Court. See 42 Ala. 672; 61 *Id.* 554; 67 *Id.* 18. In these cases, that court seems to rule that Gabbett is not a fellow-servant with Krogg, the engineer, and we think that this view is correct, although in 59 Ala. 251, the contrary is held, but we are not bound by the interpretation of the common law, as made by the courts of Alabama; as to what is the common law on this subject, this court is not only competent to decide, although the accident occurred in Alabama, but it is its duty to decide, the common law being the same in both jurisdictions. As to the construction which the courts of that State place upon its own statutes or other local laws bearing on the case, we will follow such construction. And this was the ruling of the Supreme Court of the United States in Hough *vs.* The Texas Pacific Railroad, 100 U. S. Rep. 214.

3. The decisions of this court have been uniform, that a fellow-servant is one employed about the same work with the servant injured, and whose negligence caused the injury to the servant complaining. See 30 *Ga.* 146, 150, in which Judge Stephens takes a philosophical view of this question, and ruled as this court did in *Bain vs. Athens Foundry*, decided two terms ago, 75 *Ga.* 718; but the case cited in 100 U. S. is a learned and able opinion and is absolutely decisive of this question. If any doubt formerly existed as to who were fellow-servants, that decision resolves the doubt.

4. Again, if a railroad corporation know of the improper

construction of its road-bed, and that the cross-ties and other superstructure are rotten, or if the same be known to the officers of the road who are charged with the duty of repairing the same, this would be notice to the corporation; and if the corporation fail to make suitable repairs, this is negligence on the part of the corporation, and it would be liable for any injury that might occur on that account to any one, whether he be a servant of the corporation or not, notwithstanding the failure to repair was owing to the negligence of the general manager and superintendent of the road or the road-master or section-boss.

5. It is insisted that, as this injury arose in Alabama, the period of the statute of limitations is that prescribed by the statute of that State. We do not agree with this view of the counsel for the defendant companies; it would seem that at this day it would require neither argument nor authority to settle this point. The counsel refer to *Lacy's* case, 43 *Ga.* 461, to sustain this proposition. In that case, the injury was the homicide of plaintiff's husband which occurred in Alabama. That State, by statute, gave a right of action to the administrator of the person killed, but limited the time for bringing the action to one year from the time the cause of action accrued. This court held that the case was barred, it not having been brought within one year. But in the case being now determined, the plaintiff had a right of action at common law, and the statute of limitations is the ordinary statute which applies to actions for torts. In such cases, the statute of limitations of the place of the forum governs. Townsend *vs.* Jemison, 9 Howard, 407.

6. It is further contended that the court below committed manifest error in instructing the jury that they " would be authorized to reduce the damages," etc., if they see proper. We think that this charge is objectionable, in that it turns the jury loose to do as they pleased, and we think the court should hold them well in hand; but we held in *Georgia Railroad vs. Pittman*, 73 *Ga.* 325, that such

a charge as this was cured by other portions of the charge, in which the court confined the jury to their duty as to their finding. Immediately after the charge complained of follow two charges by the court, the same being requests of defendants' counsel, and these requests corrected the looseness of the charge complained of; so we think no harm resulted from the charge. The judgment of the court in refusing to grant the new trial upon the grounds taken in the cross-bill is affirmed.

Judgment reversed on main bill of exceptions and affirmed on cross-bill.