A04A1895. CANZIANI v. VISITING NURSE HEALTH SYSTEMS, INC. et al.
(610 SE2d 660)

MILLER, Judge.

Cristina Canziani appeals pro se from the trial court's order granting summary judgment to Visiting Nurse Health Systems, Inc. (VNHS), and its employees, Jayne McCollum, R.N., and Georgeanna Morrow, R.N., on Canziani's claims for intentional infliction of emotional distress, misrepresentation, and invasion of privacy. Since Canziani has failed to create any genuine issue of material fact with respect to any of her claims, we affirm.

On appeal from the grant of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law. *Holbrook v. Stansell*, 254 Ga. App. 553, 553-554 (562 SE2d 731) (2002).

So viewed, the evidence reveals that Canziani underwent quadruple bypass surgery on October 19, 2000, and was discharged from the hospital on October 25. Canziani had to return to the hospital immediately, however, due to a staph infection on her chest and an e-coli infection on her thigh. Canziani was treated for these infections and discharged to her home on November 17.

Because Canziani lived alone and needed follow-up care, her doctor referred her to home health care that would be provided by VNHS.[1] VNHS sent one of its nurses to Canziani's home on November 18, and on that day Canziani signed a Patient Agreement allowing VNHS to provide medical treatment to her in her home. The Patient Agreement also allowed VNHS to release any information directly to Canziani's insurer in order to receive payment. The Plan of Treatment approved by Canziani's doctor included treating and cleaning Canziani's wounds and flushing her PICC tube[2] two times per week. Pursuant to the plan, the nurses were instructed to teach Canziani how to (i) care for her wounds, (ii) maintain her diet, (iii) care for her diabetes, and (iv) keep her home safe. The Plan of Treatment also specifically provided in large print that Canziani would be discharged "WHEN [SHE] SHOW[ED] INDEPENDENCE WITH SELF-CARE AND DISEASE MANAGEMENT."

On November 20, Canziani had her first home visit with nurse McCollum. During this visit, Canziani felt that McCollum was "talking down" to her. McCollum "wasn't yelling, [but] . . . she was overly polite in the way that people who really have no regard for you can be." McCollum attempted to teach Canziani how to flush her own PICC tube and how to change her own wound dressings, but Canziani refused to do these things on her own, saying that it was McCollum's job to do them.

Over the course of the week that McCollum treated Canziani, McCollum repeatedly told her that she needed to participate in her own wound care and learn how to flush her own PICC line or else Canziani might lose her insurance coverage. Canziani was upset by these statements because she feared that if she lost her insurance coverage for skilled nursing care, her infections would return and she would die.

Canziani sued VNHS, McCollum, Morrow (McCollum's supervisor), and several others[3] for intentional infliction of emotional distress, misrepresentation, and invasion of privacy. The trial court granted summary judgment to VNHS and its nurse employees on all of Canziani's claims, prompting Canziani to appeal.

1. In two enumerations, Canziani argues that the trial court erred in granting summary judgment to appellees on her claim for

---

[1] VNHS is a nonprofit organization that employs nurses to provide in-home health care for individuals who need assistance.

[2] A PICC (peripherally inserted central catheter) tube is an intravenous line that is inserted through a patient's arm and into a major blood vessel leading to the heart. The tubes can be used to draw blood and to give intravenous fluids, blood medications, or nutrition.

[3] The other individual and additional entities originally sued by Canziani are not parties to this appeal.

intentional infliction of emotional distress. We find Canziani's arguments to be without merit.

In order to prove her claim for intentional infliction of emotional distress, Canziani was required to show that (1) the conduct at issue was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) the resulting emotional distress was severe. See, e.g., *United Parcel Svc. v. Moore*, 238 Ga. App. 376, 377 (519 SE2d 15) (1999).

> Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law. Moreover, it has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

(Citations and punctuation omitted.) *Phinazee v. Interstate Nationalease*, 237 Ga. App. 39, 39-40 (514 SE2d 843) (1999). "Generally, the case is one which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to [declare that the situation is outrageous]." *ComSouth Telesvcs. v. Liggett*, 243 Ga. App. 446, 447-448 (1) (531 SE2d 190) (2000).

The conduct at issue here clearly fails to satisfy Canziani's evidentiary burden of proving her claim for intentional infliction of emotional distress. The nurse's "overly polite" comments designed to teach Canziani to be more medically independent, consistent with her treatment plan, cannot be considered to be outrageous to an average member of the community. Even though the nurse's suggestion that Canziani might lose her insurance benefits may have been rude and insensitive, especially in light of Canziani's weakened state following several medical procedures, the comments do not rise to the level of outrageousness necessary to sustain a claim for intentional infliction of emotional distress. See, e.g., *Northside Hosp. v. Ruotanen*, 246 Ga. App. 433, 436 (541 SE2d 66) (2000).

The trial court properly granted summary judgment to appellees on this claim.

2. After arguing below that she was not suing appellees for fraud, Canziani now reverses course and argues that the trial court erroneously considered her "misrepresentation" claim as one for negligent, rather than intentional, misrepresentation.

Even if the trial court somehow misconstrued Canziani's claim, however, her claim would still fail as a matter of law. Canziani has provided no evidence that she could have justifiably relied on the nurse's alleged misrepresentation. See, e.g., *Charter Med. Mgmt. Co. v. Ware Manor, Inc.*, 159 Ga. App. 378, 383 (5) (283 SE2d 330) (1981) (no evidence of justifiable reliance where manager of nursing home facility expressed opinion as to future medicare payments and plaintiff made no effort to ascertain truth of representation). Therefore, her misrepresentation claim fails.

3. Canziani asserts that issues of fact remain regarding her claim for invasion of privacy. Specifically, she argues that the manner in which nurse McCollum cared for her and communicated with her insurance carrier interfered with her "right to heal from her illness in peace and seclusion." We disagree.

"The right of privacy[,] like every other right that rests in the individual, may be waived . . . and this waiver may be either express or implied." (Citation and punctuation omitted.) *Molton v. Commercial Credit Corp.*, 127 Ga. App. 390, 393 (2) (193 SE2d 629) (1972). Here, Canziani signed a Patient Agreement authorizing McCollum and other VNHS nurses to care for her in her home and to communicate with her insurance company if necessary in order to receive proper payment. She cannot maintain an action for "invasion of privacy" based on the very actions that she authorized VNHS and its nurses to take pursuant to her signed agreement with them.

The trial court properly granted summary judgment to appellees on this claim.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 17, 2005.

Cristina Canziani, *pro se.*
*Pursley, Lowery & Meeks, Kevin B. Buice*, for appellees.