**WHOLE COURT**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** **http://www.gaappeals.us/rules**

**November 20, 2015**

# In the Court of Appeals of Georgia

A15A0884. COON v. THE MEDICAL CENTER, INC.                    DO-043

DOYLE, Chief Judge.

This case arises out of the mislabeling of the remains of a stillborn baby, resulting in the funeral and burial of the wrong child. The trial court initially denied summary judgment to the defendant hospital after concluding that under the choice-of-law rule of lex loci delicti, Alabama law would govern the emotional distress claims brought by the plaintiff mother, who first learned of the mishandled remains when contacted at her home in Alabama. The trial court later revisited the issue, however, and concluded that application of Alabama law would violate Georgia public policy because Alabama does not impose an "impact rule" on plaintiffs seeking damages for emotional distress arising from the negligent mishandling of human remains. After concluding that Georgia law should apply, the trial court granted

summary judgment in favor of the hospital, holding that the mother's emotional distress claims failed as a matter of law because she could not show physical injury, pecuniary loss, or sufficiently outrageous misconduct by the hospital. For the reasons discussed below, we affirm.

Summary judgment is proper only if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] On appeal from a trial court's grant of summary judgment, we "conduct a de novo review, construing all reasonable inferences in the light most favorable to the nonmoving party."[2]

So viewed, the record shows that Amanda Rae Coon lives in Opelika, Alabama. On February 8, 2011, Coon, who was 37-weeks pregnant, went for a routine prenatal examination at her obstetrician-gynecologist's office in Columbus, Georgia. During the examination, Coon learned that her unborn baby did not have a heartbeat.

---

[1] OCGA § 9-11-56 (c).

[2] *Bank of North Ga. v. Windermere Dev.*, 316 Ga. App. 33, 34 (728 SE2d 714) (2012).

The following day, Coon was admitted to a Columbus hospital owned by The Medical Center, Inc. (the "hospital"), where her labor was induced and she delivered a stillborn baby girl. After the delivery, the hospital's bereavement coordinator spoke with Coon and her father, who informed the coordinator that the remains of the baby were to be released to a funeral home in Opelika. The bereavement coordinator completed a mortuary permit and supporting documents that included the pertinent funeral home information and placed these documents with Coon's patient chart.

The stillborn baby initially remained with Coon in her hospital room, but Coon's mother later informed the bereavement coordinator that Coon was tired and asked that the baby be removed. The coordinator placed Coon's baby in a separate holding room on the same floor until someone could take the baby to the hospital morgue. In addition to Coon's baby, there was a smaller stillborn baby boy, who was less than 20 weeks in gestation, already in the holding room.

When the bereavement coordinator placed Coon's baby in the holding room with the smaller baby, the hospital floor was in the middle of the evening shift change. A nurse whose shift had just begun volunteered to transport both babies from the holding room to the morgue. Under a hospital policy put into effect two days earlier, identification tags were to be placed on the arm and leg of a stillborn baby and

3

on the outside of the cadaver bag before being delivered to the morgue. The nurse filled out the three tags for both of the babies.

The nurse had not yet had an opportunity to affix the identification tags when a hospital security guard came to the floor and asked the nurse if she was ready for him to escort her to the morgue with the babies. Because the babies were not yet prepared for transport to the morgue, the security guard decided to assist the nurse with the placement of the identification tags. The security guard had never tagged a deceased baby, and his job duties did not include tagging the remains of deceased patients or preparing them for transport to the morgue.

When the security guard began assisting the nurse, they mixed up the identification tags. The nurse tagged the smaller baby with the identification tags for Coon's baby, and the security guard tagged Coon's baby with the identification tags for the smaller baby. The security guard placed a tag on the outside of the cadaver bag for Coon's baby, but chose not to "fool" with the tags on the baby's body because he did not want to remove any of the baby's clothing. The nurse repeatedly told the security guard that he needed to place identification tags on the body of Coon's baby, but he chose not to do so.

4

The nurse and security guard transported the stillborn babies to the morgue with the wrong identification tags and logged in the remains. Because of the incorrect identification tags, the hospital mistakenly released the wrong baby to the Opelika funeral home.

On February 12, 2011, Coon, her family members, and other mourners attended a funeral at an Opelika cemetery for a deceased stillborn baby whom they believed was Coon's. Coon and her family members did not view the baby's remains before or during the funeral service after the funeral director advised against it, given the condition of the remains.[3] The costs of transporting the baby from the hospital to the funeral home were paid by Coon's husband through the military, and Coon's aunts paid for the funeral service and donated the burial plot.

On February 23, 2011, the hospital discovered that it had released the wrong baby to the Opelika funeral home. The hospital contacted the director of the Opelika funeral home, informed him of the mistake, and requested contact information for Coon's family. The funeral director advised the hospital to contact Coon's father

---

[3] The funeral home director later testified that when he received the stillborn baby from the hospital, he had chosen not to take the baby out of the cadaver bag or undress her because of the state of decomposition.

5

rather than Coon herself because "mentally, she [would] just not [be] able to take it" if she learned of the mistaken identification.

Later that day, the hospital's chief executive officer contacted Coon by telephone and informed her that the hospital had released the wrong baby for burial. The following day, the baby who had been mistakenly released to the funeral home was exhumed from the Opelika cemetery. The funeral home director then traveled to Columbus to deliver the exhumed baby to a different funeral home and to retrieve Coon's baby from the hospital.

After the exhumed baby's remains were handed over to the representative of another funeral home, the Opelika funeral director retrieved a cadaver bag from the hospital morgue that had an identification tag for Coon's baby on the outside of it. Yet, when the director returned to his funeral home in Opelika, he discovered that the cadaver bag contained nothing but a blanket, and he had to return again to the hospital morgue to obtain Coon's baby, whom hospital employees had left in a holding room in the morgue. In violation of hospital policy, no documentation was made in the morgue log book showing when Coon's baby or the exhumed baby were returned to the morgue or to show when the switch occurred and who was involved.

6

Once the funeral director obtained the proper remains from the hospital, Coon's baby was buried at the Opelika cemetery. The hospital paid the costs associated with the exhumation of the misidentified baby and the subsequent burial of the correct remains. Coon did not attend the second burial because she "could not handle having to go through that all over again."

In March 2011, Coon filed the present lawsuit against the hospital, seeking damages for the emotional distress she suffered as result of the mishandling of her stillborn child's remains.[4] Following discovery, the hospital moved for summary judgment, contending that Coon's emotional distress claims failed under Georgia law because Coon suffered no physical injury or pecuniary loss and the conduct of the hospital was not intentional, reckless, extreme, or outrageous. In response, Coon argued that Alabama law applied under the choice-of-law rule of lex loci delicti because she suffered the relevant emotional distress in Opelika, where she learned of the hospital's mistake and the funeral service, burial, exhumation, and reburial had occurred. Coon further argued that under Alabama law, she was not required to prove

_____

[4] Columbus Regional Healthcare System, Inc. was named as a defendant in the original complaint but later was dismissed from the case.

physical injury, pecuniary loss, or intentional or reckless misconduct to support an emotional distress claim for the mishandling of human remains.

The trial court concluded that Alabama law applied and denied the hospital's motion for summary judgment. When the hospital moved for reconsideration, the trial court denied the motion but certified its order for immediate review. The hospital then filed an application for interlocutory appeal. This Court initially granted the application but later dismissed it as improvidently granted.

Following the dismissal of the appeal, the hospital filed a renewed motion for summary judgment, contending that Alabama law should not apply under the public policy exception to the lex loci delicti rule and that all of Coon's claims failed under Georgia law. The trial court agreed with the hospital, concluding that the application of Alabama law would contravene Georgia public policy because Alabama, unlike Georgia, does not have an "impact rule" in emotional distress cases involving the negligent mishandling of human remains. Applying Georgia rather than Alabama law, the trial court further concluded that Coon's claims failed as a matter of law under the more stringent standard for emotional distress claims in Georgia. Consequently, the trial court granted the hospital's renewed motion for summary judgment, resulting in this appeal by Coon.

1. Coon argues that the trial court erred by concluding that Georgia rather than Alabama law should apply in this case based on the public policy exception to the rule of lex loci delicti. We disagree.

Under Georgia law, choice-of-law issues in tort cases are controlled by the rule of lex loci delicti, which requires courts to apply the "substantive law of the place where the tort or wrong occurred."[5] "The general rule is that the place of wrong, the locus delicti, is the place where the injury sustained was suffered rather than the place where the act was committed, or, as it is sometimes more generally put, it is the place where the last event necessary to make an actor liable for an alleged tort takes place."[6]

Here, pretermitting whether the last event necessary to make the hospital liable for the alleged tort took place in Alabama,[7] Georgia law applies to Coon's claims against the hospital based on the public policy exception to the rule of lex loci

---

[5] *Intl. Bus. Machines Corp. v. Kemp*, 244 Ga. App. 638, 640 (1) (a) (536 SE2d 303) (2000). See *Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 809, 816 (621 SE2d 413) (2005).

[6] (Punctuation omitted.) *Risdon Enterprises v. Colemill Enterprises*, 172 Ga. App. 902, 903 (1) (324 SE2d 738) (1984). See *Intl. Bus. Machines Corp.*, 244 Ga. App. at 640-641 (1) (a) (noting that under the lex loci delicti rule, "the place of the wrong is where [the] injury is sustained").

[7] See *Kemp*, 244 Ga. App. at 641 (1) (a).

9

delicti.[8] As aptly stated by the trial court, "there is a significant difference between Alabama and Georgia law on the issue of the impact rule. Georgia follows its impact rule for sound reasons. It is not proper to ignore the rule of law regardless of the compelling emotional considerations." The policies behind Georgia's impact rule have been fully developed, and our Supreme Court has rejected invitations to abandon the impact rule in difficult cases.[9] Accordingly, the trial court properly applied Georgia law to this case in granting summary judgment to the hospital.[10]

2. Coon also argues that, under Georgia law, the trial court erred by ruling that she did not suffer pecuniary loss as alleged in her First Amended Complaint.[11] Under Georgia's impact rule, "recovery for [negligent infliction of] emotional distress is

---

[8] Under the public policy exception, we will not apply the law of the place where the injury was sustained if it would conflict with Georgia's public policy. Cf. *Alexander v. Gen. Motors Corp.*, 267 Ga. 339, 340-341 (478 SE2d 123) (1996) (applying Georgia law rather than Virginia law even though injury occurred in Virginia because Virginia products liability law violated Georgia public policy).

[9] See, e.g., *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 587-588 (II) (533 SE2d 82) (2000) (discussing policy implications of the impact rule and declining to abandon it).

[10] See *Alexander*, 267 Ga. at 341 (applying public policy exception because the lex loci was "radically different" from Georgia).

[11] That pleading alleged that Coon suffered "pecuniary loss, mental injury, anguish, and severe emotional distress."

allowed only where there is some impact on the plaintiff, and that impact must be a physical injury."[12] It is undisputed that there was no physical impact to Coon. And although Georgia law permits an exception for certain pecuniary losses, the exception applies only to "*a pecuniary loss resulting from an injury to the person which is not physical*."[13] Here, as the trial court concluded, the funeral and burial expenses incurred by Coon were not a direct result of the emotional injury experienced by Coon, but were a result of having a stillborn child. Thus, the funeral and burial expenses are not sufficient to overcome the impact rule requirement.

With respect to the costs associated with disinterment and reburial of the correct stillborn baby – which were not inevitable costs of having a stillborn baby – Coon contends that the collateral source rule bars the Hospital from benefitting from its payment (or payments by others) of those costs on her behalf.[14] But, as the trial

---

[12] (Punctuation omitted.) *Lee*, 272 Ga. at 584 (I), quoting *Ryckeley v. Callaway*, 261 Ga. 828 (412 SE2d 826) (1992).

[13] (Emphasis in original; punctuation omitted.) *Ob-Gyn Assoc. of Albany v. Littleton*, 259 Ga. 663, 666 (2) (B) (386 SE2d 146) (1989), overruled in part on other grounds by *Lee v. State Farm &c. Ins. Co.*, 272 Ga. 583, 588, n. 8 (533 SE2d 82) (2000).

[14] See generally *Candler Hosp. v. Dent*, 228 Ga. App. 421 (491 SE2d 868) (1997) ("The common law rule in Georgia bars the defendant from presenting any evidence as to payments of medical, hospital, disability income, or other expenses of

court observed, these costs were not a direct result of Coon's mental suffering. To trigger the exception to the impact rule, the pecuniary loss must result from the plaintiff's *injury*, i.e., mental suffering, and here the disinterment and reburial costs did not arise from her *injury*, even though they arose from the Hospital's allegedly negligent conduct.[15] Thus, the trial court properly granted summary judgment to the hospital with regard to Coon's claims for negligent infliction of emotional distress.

3. As for the intentional infliction of emotional distress claims, Coon

was required to show that (1) the conduct at issue was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) the resulting emotional distress was severe. Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law. Moreover, it has not been enough that the defendant has

---

a tortious injury paid for by a plaintiff, governmental entity, or third party and taking credit towards the defendant's liability in damages for such payments, because a tortfeasor is not allowed to benefit by its wrongful conduct or mitigate its liability by collateral sources provided by others.").

[15] See *Littleton*, 259 Ga. at 666 (2) (B). Compare *Nationwide Mut. Fire Ins. Co. v. Lam*, 248 Ga. App. 134, 138 (2) (546 SE2d 283) (2001) (plaintiff's mental injury resulted in hospitalization for ten days and medical expenses totaling more than $12,000), questioned by *Oliver v. McDade*, 328 Ga. App. 368, 370 n.5 (762 SE2d 96) (2014), which was vacated in part by *Oliver v. McDade*, __ Ga. __ (772 SE2d 701) (2015).

acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.[16]

Here, the trial court properly concluded the hospital was also entitled to summary judgment because the hospital's conduct, while a "tragic mistake," did not rise to the level of egregiousness or outrageousness necessary to sustain this claim.[17]

4. Finally, the trial court properly granted summary judgment as to Coon's claim for punitive damages because they are derivative of her other claims which fail as a matter of law.[18]

Accordingly, the trial court correctly granted summary judgment to the Hospital.

---

[16] (Citation and punctuation omitted.) *Canziani v. Visiting Nurse Health Systems, Inc.*, 271 Ga. App. 677, 679 (1) (610 SE2d 660) (2005).

[17] See id.

[18] See *Veatch v. Aurora Loan Svcs., LLC*, 331 Ga. App. 597, 602 (2) (771 SE2d 241) (2015).

*Judgment affirmed.* Phipps, P. J. and Ray, J., concur. Boggs, J., concurs in judgment only. Andrews, P. J. and McMillian, J., concur in Divisions 2, 3, and 4 and specially. Barnes, P. J., dissents.

A15A0884. COON v. THE MEDICAL CENTER, INC.

McMILLIAN, Judge, concurring specially.

Under Georgia's long-standing conflict of laws jurisprudence, Georgia common law controls the issues in this case, but not because of the public policy exception to the lex loci delicti rule. Although I agree that the trial court's order granting summary judgment to the Medical Center should be affirmed, I do not agree with all that is said in Division 1 of the majority opinion, and thus concur specially.[1]

_____

[1] I concur fully to Divisions 2, 3 and 4 of the majority opinion.

I agree with the majority that we begin our analysis by applying the choice-of-law rule of lex loci delicti,[2] under which the law of the state where the tort is committed governs, and further believe that the trial court correctly concluded that the law of the state of Alabama controls. See *Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 816 (621 SE2d 413) (2005) ("The rule of lex loci delicti remains the law of Georgia."). But that determination does not end the inquiry as to what that law is.

Under Georgia's conflict of laws jurisprudence, once it is determined under the relevant choice-of-law rule[3] that another state's laws control the action, the court must then look to see whether statutory law from that state forms the basis for the right to recover, in which case, our courts will apply the statutory law as well as the "construction placed upon it by the highest court of such State." *Slaton v. Hall*, 168 Ga. 710, 715 (148 SE 741) (1929). See also *Motz v. Alropa Corp.*, 192 Ga. 176, 176

---

[2] Some of our case law alternatively spells this term as lex loci delecti. See, e.g., *Bailey v. Cottrell, Inc.*, 313 Ga. App. 371 (721 SE2d 571) (2011).

[3] In addition to lex loci delicti for tort cases, Georgia applies the traditional rule of lex loci contractus in contract cases. See *General Telephone Co. of Southeast v. Trimm*, 252 Ga. 95, 95 (311 SE2d 460) (1984) ("Under this approach, contracts are to be governed as to their nature, validity and interpretation by the law of the place where they were made, except where it appears from the contract itself that it is to be performed in a State other than that in which it was made, in which case . . . the laws of that sister State will be applied.") (citation and punctuation omitted).

2

(1) (15 SE2d 237) (1941) ("The rights of the parties to a contract made and to be performed in another State are controlled not only by its pertinent statutes but by the decisions of its appellate courts construing and applying those statutes."); *Lay v. Nashville, Chattanooga & St. Louis R. Co.*, 131 Ga. 345, 345 (62 SE 189) (1908) ("courts of this State will follow the decisions of a sister state in construing the statutes thereof"); *Krogg v. Atlanta & West Point R.*, 77 Ga. 202, 214 (1886) ("As to the construction which the courts of that State place upon its own statutes or other local laws bearing on the case, we will follow such construction.").

Our appellate courts have taken a markedly different approach when common law rather than statutory law governs. As explained in *Nisbet v. Trustees of Jesse Parker Williams Hospital*, 189 Ga. 807 (7 SE2d 737) (1940), if the foreign state was one of the original thirteen American colonies or was derived from the territory encompassed in one of the colonies, "the construction of the common law given by the courts of this State will control, in preference to the construction given by the courts of the State of the contract." Id. at 811; *Motz,* 192 Ga. at 176. In other words, our courts will presume that the common law of the other state is the same as the common law in Georgia and thus will apply Georgia law. See *Slaton*, 168 Ga. at 718 (on rehearing, clarifying that Georgia rule applies); *Record Truck Line, Inc. v.*

3

*Harrison*, 109 Ga. App. 653, 658 (3) (137 SE2d 65) (1964) ("The common law as applied by the courts of this State is the common law."). That is because the "common law is presumed to be the same in all the American States where it prevails. Though courts in different States may place a different construction upon a principle of common law, that does not change the law. There is still only one right construction." *Slaton*, 168 Ga. at 716. And not only are our courts "competent to decide" what the common law is, "but it is its duty to decide, the common law being the same in both jurisdictions."[4] *Krogg*, 77 Ga. at 214. See also *Risdon Enterprises, Inc. v. Colemill Enterprises, Inc.*, 172 Ga. App. 902, 904 (2) (1984) ("Where the rights of parties

---

[4] I recognize that these presumptions may seem anachronistic and peculiar, but that is the law as set out by our Supreme Court, which has not been overruled. Notably, as recently as 1984, the Supreme Court cited *Nisbet* favorably and quoted a Court of Appeals case describing *Nisbet* as "the leading Georgia case explanatory of the law of *lex loci contractus*." (Citation and punctuation omitted.) *General Telephone Co. of the Southeast v. Trimm*, 252 Ga. 95, 96 (311 SE2d 460) (1984). And federal courts in the Eleventh Circuit, in applying Georgia's conflict-of-law rules, have likewise found that these presumptions remain good law. See, e.g., *Frank Briscoe Co., Inc. v. Ga. Sprinkler Co.*, 713 F2d 1500, 1503 (11th Cir. 1983) ("When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law."); *In re Tri-State Crematory Litigation*, 215 F.R.D. 660, 677 (N.D. Ga. 2003) ("The Court, bound by case law from the Supreme Court of Georgia and the United States Court of Appeals for the Eleventh Circuit, finds that if no foreign statutes are 'involved,' then the Court must apply Georgia law."); *Briggs & Stratton Corp. v. Royal Globe Ins. Co.*, 64 FSupp.2d 1340, 1343 (M.D. Ga. 1999) (collecting cases decided since *Frank Briscoe* and concluding that *Nisbet* remains good law).

4

depend upon South Carolina law, and no statute of that state is pleaded or proved, this court will presume that the common law is to be applied there."); *Green v. Johnson*, 71 Ga. App. 777, 778 (32 SE2d 443) (1944) ("Where suit is brought in this State to recover damages for personal injuries sustained in a sister State, which was one of the thirteen original States, the rights of the parties as to the merits of the case as distinguished from procedure are to be determined by the law of such sister State, and where no statute of that sister State is pleaded or shown, it will be presumed that the common law is of force there."). See generally John B. Rees, Jr., *Choice of Law in Georgia: Time to Consider a Change?*, 34 MERCER L. REV. 787, 789-90 (1983).

On the other hand, if the other state was never part of the original thirteen colonies or their territories, "[t]here is no presumption that the common law of England exists in such a State" because the state clearly did not "inherit its laws from England." *Nisbet*, 189 Ga. at 811. "Under such circumstances, the law of the foreign State must be pleaded, in the absence of which it will be presumed that the law of this State obtains therein." Id.

Applying these rules here, Coon does not contend that an Alabama statute governs her claims. And, "[w]hile Alabama was not one of the thirteen original colonies[,] it was formed from a part of the territory of Georgia." *Record Truck Line*,

5

109 Ga. App. at 658 (4). Thus, this Court is not bound by the common law as set out by the courts of Alabama, and we must apply Georgia law on recovery of emotional distress damages. See *Slaton*, 168 Ga. at 714 (in negligence case on behalf of the estate of passenger killed in a car wreck in Alabama, Georgia common law on the degree of care applies); *Lay*, 131 Ga. at 346 (granting new trial in suit for personal injuries sustained in Alabama because trial court charged on Alabama law even though "substantially the same language may have been used by the Supreme Court of Alabama, in delivering an opinion"); *Krogg*, 77 Ga. at 214 (refusing to apply Alabama common law on liability of master for injury committed by a fellow servant and applying Georgia law).

For the foregoing reasons, I would affirm the grant of summary judgment by the trial court, albeit for a different reason, and find it unnecessary to reach the question of whether the public policy exception applies.[5]

---

[5] The dissent asserts that the right for any reason rule does not apply in this instance because the specific argument was not made below. However, it is well established that "[w]e will affirm a grant of summary judgment if it is right for any reason, whether stated or unstated in the trial court's order, so long as the movant raised the *issue* in the trial court and the nonmovant had a fair opportunity to respond." (Citation and punctuation omitted; emphasis supplied.) *Godwin v. Mizpah Farms, LLLP*, 330 Ga. App. 31, 38, n.7 (766 SE2d 497) (2014). The hospital raised the issue that under the applicable conflict of law principle of lex loci delicti, Georgia law applied, and Coon had a fair opportunity to respond. This Court should not be

6

I am authorized to state that Presiding Judge Andrews joins in this special concurrence.

_____

bound by the parties' inaccurate and incomplete application of the law.

A15A0884. COON v. THE MEDICAL CENTER, INC.

BARNES, Presiding Judge, dissenting.

I respectfully dissent because Alabama law applies to plaintiff Coon's emotional distress claims under the choice-of-law rule of lex loci delicti, and the trial court's order granting summary judgment to the defendant hospital therefore should be vacated and the case remanded for application of the proper law. Contrary to the majority opinion, the public policy exception to the lex loci delicti rule does not apply here, given that application of Alabama law in a case involving the mishandling of human remains does not seriously contravene the public policy underlying Georgia's impact rule. And contrary to the special concurrence, the fact that Coon does not

point to an Alabama statute to support her claims has no bearing under the circumstances of this case, where the hospital did not raise that issue in the court below, Coon had no notice or opportunity to be heard on the issue, and the trial court never considered the issue as part of its summary judgment ruling.

Given the facts of this case, Alabama rather than Georgia law should apply under the choice-of-law rule of lex loci delicti. Under that rule, courts apply the "substantive law of the place where the tort or wrong occurred." *Intl. Bus. Machines Corp. v. Kemp*, 244 Ga. App. 638, 640 (1) (a) (536 SE2d 303) (2000). The place where the tort or wrong occurred "is the place where the injury sustained was suffered rather than the place where the act was committed," or put a different way, "the place where the last event necessary to make an actor liable for an alleged tort takes place." (Citation and punctuation omitted.) *Risdon Enterprises v. Colemill Enterprises*, 172 Ga. App. 902, 903 (1) (324 SE2d 738) (1984).

The hospital's mishandling of the remains of Coon's stillborn baby occurred in Georgia, but Coon was at her home in Alabama when she received the telephone call from the hospital in which she first learned of the mistake. Before that telephone call, Coon could not have logically suffered emotional injury as a result of the hospital's alleged tortious conduct because she had been unaware of what had

2

occurred. It was at that point, upon finding out that the hospital never released her stillborn baby to the Alabama funeral home, that she had buried the wrong baby, and that she was going to have to endure another burial, that Coon began suffering emotional distress related to the hospital's mishandling of the remains. In addition, the initial funeral service and the burial, exhumation, and second burial all occurred in Alabama. Based on this record, Coon's injury clearly was sustained in Alabama; therefore, the "last event" related to her emotional distress claim occurred in that state, and Alabama rather than Georgia law should apply under the rule of lex loci delicti. See *Intl. Bus. Machines Corp.*, 244 Ga. App. at 641 (1) (a).

As the majority opinion points out, application of the rule of lex loci delicti is subject to a public policy exception. See *Alexander v. General Motors Corp.*, 267 Ga. 339, 340-341 (478 SE2d 123) (1996); *Carroll Fulmer Logistics Corp. v. Hines*, 309 Ga. App. 695, 696-698 (710 SE2d 888) (2011); *Karimi v. Crowley*, 172 Ga. App. 761, 762-763 (324 SE2d 583) (1984). "Under this exception, even if the tort occurred in another state, a Georgia court will not as a matter of courtesy or comity apply the other state's substantive law if the law of the other state contravenes the public policy of Georgia." (Citations and punctuation omitted.) *Carroll Fulmer Logistics Corp.*, 309 Ga. App. at 696. See *Alexander*, 267 Ga. at 340. But the public policy exception

3

applies only if the law of the other state is so "radically dissimilar to anything existing in our own system of jurisprudence" that it would "seriously contravene" the policy embodied in Georgia law. *Southern R. Co. v. Decker*, 5 Ga. App. 21, 25 (1), 29 (2) (62 SE 678) (1908).

As the "radically dissimilar" requirement suggests, the fact that the law of another state differs in some respect from our own law does not mean that the law of the other state necessarily violates the public policy of Georgia; otherwise, a choice of law analysis would never be necessary, and the rule of lex loci delicti would be rendered moot. See *Southern R. Co.*, 5 Ga. App. at 22 (2) (holding that the application of Alabama law would not contravene Georgia public policy even though the measure of damages under Alabama law was "dissimilar to the measure prescribed in like cases by the statutes of this state") (syllabus by the court). Moreover, there is a presumption in favor of applying the lex loci delicti rule, "and the burden rests upon the party objecting to show that the enforcement of the proper law would be inconsistent with the domestic policy" of this state. (Citation and punctuation omitted.) Id. at 29 (2).

The majority opinion concludes that application of Alabama law in this case would conflict with Georgia public policy because Alabama, in contrast to Georgia,

4

does not apply an impact rule in emotional distress cases involving the negligent mishandling of human remains. But the fact that the emotional distress law of Alabama and Georgia differ in some respect does not demonstrate, without more, that Georgia public policy would be undermined by applying Alabama law. Indeed, the majority does not specifically identify or discuss any of the public policy reasons for Georgia's impact rule or explain how application of Alabama law in this case would seriously contravene them. When the public policy reasons for the impact rule are identified and considered, however, it is clear that application of Alabama law in a case like the present one would not seriously contravene Georgia public policy.

Under Georgia's impact rule, "[i]n a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury." (Citation and punctuation omitted.) *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 584 (I) (533 SE2d 82) (2000). In *Lee*, our Supreme Court identified the three public policy reasons underlying Georgia's impact rule:

> First, there is the fear, that absent impact, there will be a flood of litigation of claims for emotional distress. Second, is the concern for fraudulent claims. Third, there is the perception that, absent impact, there would be difficulty in proving the causal connection between the

5

defendant's negligent conduct and claimed damages of emotional distress.

272 Ga. at 587 (II). Where these three public policy concerns are not present, our Supreme Court and this Court have recognized certain limited exceptions to the application of the impact rule. See *Lee*, 272 Ga. at 588 (III) (declining to apply the impact rule where a parent physically injured in an automobile collision sought to recover for emotional distress caused by witnessing the death of her child in the collision); *Bruscato v. O'Brien*, 307 Ga. App. 452, 457-458 (1) (705 SE2d 275) (2010) (declining to apply the impact rule to a medical malpractice claim).

These three public policy concerns are likewise not present in this case, where the narrow issue is the application of Alabama law in a Georgia court to a claim for the mishandling of human remains. As *Lee* makes clear, the impact rule is designed to safeguard Georgia courts from a flood of amorphous, potentially fraudulent emotional distress claims by injecting an objective benchmark (physical injury or pecuniary loss) into the analysis. But there is no risk of a flood of litigation in Georgia by simply allowing a plaintiff to pursue an emotional distress claim under Alabama law in the limited context where the lex loci delicti rule makes that law applicable in a Georgia court. Thus, the important gate-keeping function that the

impact rule serves will not be undermined by allowing the present case to proceed under Alabama law. Furthermore, concerns about avoiding fraudulent claims, and about proving the causal connection between the alleged negligent conduct and the claimed emotional distress, are far less pronounced in the unusual and tragic circumstance where a child's remains have been mishandled – a circumstance that virtually everyone would agree would cause emotional suffering to the parent. Consequently, application of Alabama law in this context would not seriously contravene the public policy concerns that underlie Georgia's impact rule, and the public policy exception to the lex loci delicti rule therefore is inapplicable. Cf. *Dawkins v. State*, 412 SE2d 407, 408 (S.C. 1991) (application of Georgia's impact rule in a South Carolina court would not violate the public policy exception to the rule of lex loci delicti).

Because Georgia's public policy exception to the lex loci delicti rule does not apply in this case, the trial court erred by relying upon Georgia rather than Alabama law in evaluating Coon's emotional distress claims on summary judgment. Accordingly, this Court should vacate the trial court's grant of summary judgment in favor of the hospital and remand for the trial court to consider in the first instance whether the hospital is entitled to summary judgment on Coon's emotional distress

7

claims under Alabama law. See *City of Gainesville v. Dodd*, 275 Ga. 834, 838-839

(573 SE2d 369) (2002); *United HealthCare of Ga. v. Ga. Dept. of Community Health*,

293 Ga. App. 84, 92-93 (2) (d) (666 SE2d 472) (2008).

The allegedly material distinction drawn by the special concurrence between

statutory and common law claims for purposes of Georgia's choice-of-law rules

should not change the outcome here. The special concurrence would affirm the trial

court's grant of summary judgment to the hospital under the "right for any reason"

rule because "Coon does not contend that an Alabama statute governs her claims" and

Georgia courts allegedly are not bound by Alabama courts' construction of the

common law of emotional distress. But this argument was not presented in the

hospital's motion for summary judgment before the trial court, the issue was not

raised by either party on appeal, and Coon has had no opportunity to respond to the

argument or explain whether there are any Alabama statutes that bear on her claims.

> This is a court for the review and correction of errors committed in the
> trial court, and an argument that was not made below will not be
> considered on appeal. Although, as a matter of judicial economy, we
> will affirm a grant of summary judgment under the "right for any
> reason" rule, we will generally only do so when the judgment may be
> sustained upon a legal basis apparent from the record *and which was
> fairly presented in the court below*.

8

(Citations and punctuation omitted; emphasis supplied.) *Bullington v. Blakely Crop Hail*, 294 Ga. App. 147, 152 (3) (668 SE2d 732) (2008).

Because nothing in the record before us shows that the argument raised sua sponte by the special concurrence was fairly presented in the court below, we should not consider whether to affirm the trial court on that alternative basis. See *Bullington*, 294 Ga. App. at 152 (3); *Grizzle v. Norsworthy*, 292 Ga. App. 303, 305 (1) (b) (664 SE2d 296) (2008). Compare *Cox v. Edelson*, 243 Ga. App. 5, 7-8 (1) (530 SE2d 250) (2000) (summary judgment will not be affirmed as "right for any reason" based on legal argument never raised below), with *Abellera v. Williamson*, 274 Ga. 324, 327 (2) (553 SE2d 806) (2001) (appellate court may determine whether the trial court's grant of summary judgment was right for an alternative reason that was raised in the court below but not addressed by the trial court in its order). Any other result deprives Coon of a "full and fair notice and opportunity to respond prior to entry of summary judgment." (Citations and punctuation omitted.) *Hodge v. SADA Enterprises*, 217 Ga. App. 688, 690 (1) (458 SE2d 876) (1995).

For these combined reasons, the emotional distress law of Alabama applies in this case, necessitating that we vacate the trial court's summary judgment order and

remand for application of that law. Because the majority opinion and special concurrence conclude otherwise, I must respectfully dissent.